UNITED STATES of America, Appellant,

v.

Gregory David WERBER, a.k.a. Gregory Allen Larson, a.k.a. Stephen Joseph Domozick, a.k.a. Mark J. Thomas, a.k.a. Alejandro Gancedo, a.k.a. David Hammerman, and John Peter Schmidt, a.k.a. Ronald Wertheim, a.k.a. Rodney Saegrov, a.k.a. John Blaser, a.k.a. Ronald Kaminski, Defendants–Appellees.

Nos. 449, 1199, Dockets 94–1162, 94–1213.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1995.

Decided March 29, 1995.

Miguel A. Estrada, Special Asst. U.S. Atty., Washington, DC (Mary Jo White, U.S. Atty., Paul G. Gardephe, Asst. U.S. Atty., S.D. New York, of counsel), for appellant.

Georgia J. Hinde, New York City, for defendant-appellee John Peter Schmidt.

Gregory David Werber, pro se, Kenneth D. Wasserman, New York City, standby counsel.

Before: KEARSE, McLAUGHLIN, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

■ The question presented is whether Rule 36 of the Federal Rules of Criminal Procedure permits a district court to amend a sentence imposed several months earlier on the ground that the court had mistakenly failed to depart downwardly under the U.S. Sentencing Guidelines. The United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge*) imposed the amended sentences on February 8, 1994, and March 15, 1994. We hold that Rule 36 [1] authorizes a court to correct only clerical errors in the transcription of judgments, not to effectuate its unexpressed intentions at the time of sentencing. Accordingly, we remand with instructions to vacate the amended judgments and to reinstate the original judgments.

This case would not have arisen a dozen years ago, before the Sentencing Reform Act of 1984 inaugurated today's complex sentencing regime. Under the old Rule 35 of the Federal Rules of Criminal Procedure,[2] district courts could correct their sentencing errors within 120 days. The new sentencing framework, however, allows district judges to correct their own sentencing errors only during a seven-day window provided by Rule 35(c).[3] These rules divert more and more sentencing issues to the Court of Appeals for resolution in the first instance, even where the sentencing court itself believes that it has misapplied the law.

At the original sentencings in this case, the district court found that it had no authority under U.S.S.G. § 5G1.3 to reduce the defendants' fraud sentences by the time they had spent in federal presentence custody—to give

---

1. Rule 36 provides as follows:

    Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

2. For offenses committed prior to November 1, 1987, Rule 35 provided:

    **(a) Correction of Sentence.** The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence.

    **(b) Reduction of Sentence.** A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 120 days after the sentence is imposed....

3. The Sentencing Reform Act of 1984 amended Rule 35, eliminating all district court authority to correct sentencing errors. Pub.L. 98–473, sec. 215, 98 Stat. 1837, 2015–16. Five years ago, the Federal Courts Study Committee pointed out this deficiency, and proposed that Rule 35 be amended "to authorize the district court ... to correct an error in the sentence, on motion of either party made within 120 days of sentence imposition." Report of the Federal Courts Study Committee, April 2, 1990, at 143. This proposal was adopted in greatly restricted form as the new Rule 35(c).

them "guideline credit," so to speak.[4] The record of proceedings held many weeks later suggests that the court may have assumed that Werber and Schmidt would automatically receive credit for time already served, perhaps under 18 U.S.C. § 3585.[5]

Months later, when it became clear that the court's assumption was unfounded, the district court granted motions by both defendants to re-open their sentencing proceedings under Rule 36. Stating that it had misunderstood U.S.S.G. § 5G1.3 at the original sentencings, the court downwardly departed to give the defendants "guideline credit" for the time they had spent in federal presentence detention. The United States now appeals, seeking to reinstate the original sentences imposed on Werber and Schmidt.

## I. FACTS

In 1992, Werber and Schmidt were convicted on four counts of a five-count federal indictment, stemming from a complex scheme to fraudulently purchase and re-sell luxury sports cars to unwitting car dealers throughout the United States.[6] Because the sentencing of each defendant raises distinct issues, we discuss each separately.

### A. *Werber*

Werber was arrested on January 30, 1990, as he tried to sell a stolen Porsche to a car

---

4. Section 5G1.3 of the U.S. Sentencing Guidelines (1993) provides:
   (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
   (b) If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.
   (c) (Policy statement) *In any other case, the sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.*
   (Emphasis added.) Werber relied particularly on Application Note 2, which provides in part: *When a sentence is imposed pursuant to subsection (b), the court should adjust for any term of imprisonment already served as a result of the conduct taken into account in determining the sentence for the instant offense. Example:* The defendant has been convicted of a federal offense charging the sale of 30 grams of cocaine. Under § 1B1.3 (Relevant Conduct), the defendant is held accountable for the sale of an additional 15 grams of cocaine that is part of the same course of conduct for which the defendant has been convicted and sentenced in state court (the defendant received a nine-month sentence of imprisonment, of which he has served six months at the time of sentencing on the instant federal offense).... The court determines that a sentence of 13 months provides the appropriate total punishment. Because the defendant has already served six months on the related state charge, a sentence of seven months, imposed to run concurrently with the remainder of the defendant's state sentence, achieves this result. For clarity, the court should note on the Judgment in a Criminal Case Order that the sentence imposed is not a departure from the guidelines because the defendant has been *credited for guideline purposes* under § 5G1.3(b) with six months served in state custody.
   (Emphasis added.) At the original sentencing, the government disputed whether the 1993 Guidelines Manual should apply. We do not address this question, however, because we conclude that the district court had no jurisdiction to modify the defendants' sentences under Rule 36.

5. Section 3585(b) of Title 18 reads as follows:
   **(b) Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
   (1) as a result of the offense for which the sentence was imposed; or
   (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
   that has not been credited against another sentence.

6. Specifically, Werber and Schmidt were charged with (1) conspiracy to fraudulently use credit cards, to launder money, to transport stolen property, and to sell stolen goods, in violation of 18 U.S.C. § 371; (2) fraudulent use of credit cards in violation of 18 U.S.C. §§ 2, 1029(a); (3) money laundering in violation of 18 U.S.C. §§ 2, 1956; (4) transportation of stolen property in violation of 18 U.S.C. §§ 2, 2314; and (5) sale of stolen goods, in violation of 18 U.S.C. §§ 2, 2315. Both defendants pled guilty to Count Two. After a bench trial, both defendants were acquitted on Count Three and convicted on Counts One, Four and Five.

dealer in Beverly Hills. He was detained by state officials until July 17, 1990, when he was transferred to federal custody.

After his 1992 conviction in federal court, Werber pled guilty to related state charges in California. His federal sentencing was postponed so that he could first be sentenced in California.

On September 1, 1993, the California court sentenced Werber to time served. Accordingly, when Werber returned to the district court in New York for sentencing on the federal offenses, his state sentence had been fully discharged. Werber argued that because both his state and federal sentences were based on the same criminal conduct, the district court had authority under § 5G1.3(b) of the United States Sentencing Guidelines to deduct from Werber's federal sentence the length of his California sentence. The district judge concluded, however, that he had no such authority under § 5G1.3, since that provision only permitted adjusting a sentence if the defendant faced an "undischarged term of imprisonment."

Nevertheless, to effectuate what the court perceived to be the Sentencing Commission's underlying purpose in § 5G1.3—to impose "a sentence that most nearly approximates the sentence that would have been imposed had all the sentences been imposed at the same time"—the court departed downwardly pursuant to § 5K2.0.[7] The court reasoned that the Sentencing Commission had not adequately considered the possibility that a defendant, sentenced in state court for criminal conduct related to that giving rise to his federal conviction, might already have completed his state sentence by the time of his federal sentencing. The judge departed downwardly, however, by only 168 days—the amount of time Werber spent in *state* custody before his transfer to *federal* custody. As the district judge explained months later, he

assumed that the Bureau of Prisons would credit Werber's federal sentence with the additional time he had spent in federal custody. (App. at 247–48).

The district court sentenced Werber to 47 months and 12 days' imprisonment.[8] Judgment was entered on October 25, 1993. Werber did not appeal from that judgment.

The Bureau of Prisons subsequently determined that Werber should not receive credit against his federal sentence for the period he had spent in federal custody prior to sentencing, because that period had already been credited against his California sentence. *See* 18 U.S.C. § 3585 (precluding double-crediting of time spent in presentence detention).

In a December 11, 1993, letter to Judge McKenna, Werber argued that the Bureau of Prisons had incorrectly treated his 47–month sentence as beginning on September 1, 1993, when his California sentence was discharged. Werber urged Judge McKenna to "correct" his written judgment under Rule 36 to reflect that his federal sentence ran concurrently with the California sentence from the day he entered federal custody—over three years *before* his federal sentence was imposed. Werber argued that such a sentence complied with Judge McKenna's intent to depart downwardly under U.S.S.G. § 5K2.0 "to effectuate the intent" of § 5G1.3. On December 28, 1993, Judge McKenna entered a "corrected judgment" ordering that Werber's sentence "be served concurrently with the remainder of the California State sentence." There was no such "remainder," however, since Werber's state sentence had already been fully discharged, so the amended judgment had no practical effect.

Because the Bureau of Prisons persisted in its determination that Werber's federal sentence began on September 1, 1993, Werber asked Judge McKenna, in a letter dated Jan-

---

7. Section 5K2.0 (1993) provides, in relevant part, as follows:

   Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formu-

   lating the guidelines that should result in a sentence different from that described."

   *See supra* note 4 (reprinting text of U.S.S.G. § 5G1.3).

8. The court also ordered Werber to pay $13,900 in restitution and $200 in special assessments, and sentenced him to an additional three years of supervised release.

uary 21, 1994, to amend the judgment a second time. The judge agreed, explaining in open court that it had been his "understanding" when he originally imposed sentence that Werber would receive credit towards his federal sentence from the day he entered federal custody. On February 8, 1994, the judge invoked Rule 36 of the Federal Rules of Criminal Procedure "to correct the sentence" imposed on October 22, 1993, and imposed a new sentence of "time served."

### B. *Schmidt*

At the time he committed the present crimes, Schmidt had absconded from parole supervision stemming from a previous conviction. On March 30, 1990, Schmidt was finally apprehended on a parole violation warrant [9] as he was en route to the airport for a flight to Mexico. In 1992, Schmidt was convicted with Werber on four counts of a five-count federal indictment for his fraudulent activity since release from prison. On August 4, 1993, Judge McKenna sentenced Schmidt to 37 months' imprisonment.[10]

After Schmidt was sentenced, the Parole Commission re-opened his case to impose an appropriate punishment for his parole violation.[11] The Commission determined that Schmidt should serve a total of 64 months for the fraudulent conduct that led to his parole revocation. On the assumption that his 37–month fraud sentence would begin after his parole violation sentence, the Commission departed downwardly to 33 months, running from his March 1990 arrest—resulting in an aggregate sentence which, taking into account good time credits, would leave Schmidt in prison for approximately 64 months.

As with Werber, the Bureau of Prisons determined that Schmidt's presentence jail time could be credited against only one sentence: his 33–month parole sentence. *See* 18 U.S.C. § 3585. The Bureau also concluded, as did the Parole Commission, that Schmidt's two sentences would run consecutively. On March 15, 1994, the district court re-opened Schmidt's sentencing and declared that it had always intended to credit Schmidt's presentence detention time against his 1993 fraud sentence. Invoking Rule 36 of the Federal Rules of Criminal Procedure, the court "corrected" Schmidt's judgment to specify that his 37–month fraud sentence ran concurrently with his parole sentence, and that it commenced on the date of his arrest, March 30, 1990—the effect of which would be to require Schmidt's release forthwith.[12]

## II. DISCUSSION

### A. *Rule 36*

The main issue raised on the government's appeal is whether the district court had jurisdiction under Rule 36 of the Federal Rules of Criminal Procedure to "correct" the judgments against Werber and Schmidt so that their sentences for the 1993 fraud convictions would run concurrently with Werber's California sentence and Schmidt's parole violation sentence—starting on the dates of their arrests. Rule 36 provides as follows:

> Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

Accordingly, the question is whether the district court's failure at the original sentencings to depart downwardly under §§ 5K2.0 and 5G1.3 of the Sentencing Guidelines—to accomplish the objective identified by the

---

**9.** The warrant was issued after Schmidt failed to report to parole authorities in Utah on November 14, 1989, in relation to a 1986 conviction.

**10.** As with Werber, the district court ordered Schmidt to pay $13,900 in restitution and $200 in special assessments, and sentenced him to three years of supervised release.

**11.** Schmidt was subject to parole sanctions for failing to report to parole authorities in 1989, as well as for his subsequent fraud conviction.

**12.** Upon learning that Schmidt would no longer serve a 37–month *consecutive* sentence for his latest conviction, the Parole Commission re-opened Schmidt's parole violation proceeding. The Commission determined that there was no longer "good cause" to depart downwardly from the guideline term for Schmidt's parole violation sentence, and reinstated his original parole violation term of 60 months (less applicable good time credits).

court upon rehearing—constitutes a "clerical mistake" that the court is permitted to "correct[ ] ... at any time and after such notice, if any, as the court orders."

It is clearly established in this Circuit that "[i]t is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence. The written commitment order is mere evidence of such authority." *United States v. Marquez*, 506 F.2d 620, 622 (2d Cir.1974) (internal quotation marks omitted); *United States v. Pagan*, 785 F.2d 378, 380 (2d Cir.) (stating that when a variance exists between the oral pronouncement of sentence and the judgment of conviction and the commitment order, the oral sentence generally controls), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). Rule 36 authorizes a district judge, at any time, to amend the written judgment so that it conforms with the oral sentence pronounced by the court. What Rule 36 does not permit, however, is amendment of the oral sentence itself.[13] *See, e.g., United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir.1987) (holding "a clerical error must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature") (internal quotation marks omitted); *United States v. Jones*, 608 F.2d 386, 389 (9th Cir.1979) ("Rule 36 was intended to allow correction of clerical errors, not to allow reassessment of the merits of an earlier decision after the time for reconsideration or appeal ha[s] elapsed."). As the government points out, Rule 36 is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of "errors made by the court itself." *United States v. Daddino*, 5 F.3d 262, 264 (7th Cir. 1993).

That Rule 36 covers only minor, uncontroversial errors is supported by its optional provisions for notice to the parties. FED. R.CRIM.P. 36 ("Clerical mistakes ... may be corrected ... after such notice, *if any*, as the court orders.") (emphasis added). The district judge may sometimes dispense with notice when faced with a Rule 36 motion because a "clerical mistake" should appear on the face of the record, leaving little need for adversary proceedings to clarify the issue.

At oral argument, counsel for appellee Schmidt cited *United States v. Atherton*, 846 F.Supp. 170 (D.Conn.1994), for the proposition that a district court retains perpetual jurisdiction under Rule 36 to conform a final judgment to the unexpressed intentions of the sentencing judge. This mischaracterizes the holding of *Atherton*. At the original sentencing hearing in that case, the court stated in open court that it was imposing a $25,000 fine contingent upon the defendant's ability to pay. 846 F.Supp. at 172 n. 1. Through a clerical error, that unambiguous condition was omitted from the written judgment. The court subsequently invoked Rule 36 to enforce the clearly articulated oral sentence, not some inchoate intention of the sentencing court.

Although there are indications in the transcript of the original sentencing hearing that the district court may have *intended* that Werber and Schmidt receive credit towards their 1993 sentences for their presentence detention time, it is clear that the court took no action to effectuate any such intent. Indeed, at the request of Schmidt's defense counsel, the court specifically declined to rule whether Schmidt's sentence would run concurrently or consecutively to his parole violation sentence.[14] Accordingly, there were no "clerical mistakes" or errors in Schmidt's written judgment dated August 19, 1993. Like the oral judgment, the written judgment was deliberately silent as to whether the sentence was concurrent or consecutive.

---

13. That is not to say, however, that a court cannot correct an error in the oral sentence itself, where the error appears clearly and unambiguously on the face of the record, and is nothing more than a slip of the tongue. Rule 36 could apply where, for example, the court misstates the section under which the defendant was convicted, misidentifies the pertinent count in imposing a statutory minimum, or reads the defendant's name incorrectly.

14. At Schmidt's resentencing, the court stated that "[t]he failure to impose the sentence concurrently at that time was due to my oversight because at that time in connection with Mr. Schmidt's sentence I did not study 5G1.3." (App. at 297).

Similarly, at Werber's sentencing, the court did not purport to adjust the defendant's sentence under § 5G1.3 or § 5K2.0 of the Sentencing Guidelines to account for the time he had spent in federal custody. While the district court downwardly departed for the 168 days Werber spent in state custody, it apparently assumed that the Bureau of Prisons would automatically credit Werber for his time in federal custody. Indeed, the district court stated that its failure to depart downwardly was the result of its own "mistake and oversight" in interpreting § 5G1.3.[15] (App. at 248). Again, there was no erroneous transcription of the district court's oral sentence. The written judgment accurately reflected the absence of any sentencing adjustment for the days Werber spent in federal custody.

■ Accordingly, we hold that the district court had no jurisdiction under Rule 36 to correct the defendants' sentences, because those corrections were aimed at remedying an error of law, not an error of transcription.[16]

**B. *Rule 35(c)***

■ In the alternative, Werber claims that the district court had jurisdiction to amend his sentence under Rule 35(c) of the Federal Rules of Criminal Procedure. That rule, as amended in 1991, permits a convicted defendant to move for a correction of his sentence within seven days of the imposition of sentence where there is "arithmetical, technical, or other clear error."

Because the district court modified the defendants' original sentences more than seven days after they were imposed, the court had no jurisdiction to enter the corrected judgments under Rule 35(c). Werber's original sentence was imposed on October 22, 1993, and his corrected sentence was imposed on February 8, 1994—far beyond the seven-day period permitted by Rule 35(c). Similarly, Schmidt's original sentence was imposed on August 4, 1993. His corrected sentence was imposed on March 15, 1994—again, outside the seven-day window of Rule 35(c).

Both appellees also cite a line of cases recognizing a district court's inherent authority to correct an erroneous sentence as long as the time for appeal has not yet run. *See United States v. Arjoon,* 964 F.2d 167, 169–70 (2d Cir.1992); *United States v. Uccio,* 917 F.2d 80, 84 (2d Cir.1990); *United States v. Rico,* 902 F.2d 1065, 1068 (2d Cir.), *cert. denied sub nom. Baron v. United States,* 498 U.S. 943, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *see also United States v. Cook,* 890 F.2d 672, 675 (4th Cir.1989) (permitting correction of sentence based on acknowledged misinterpretation of sentencing guideline). What appellees overlook, however, is that all

---

**15.** As the court explained at the February 4, 1994, re-sentencing hearing:

> THE COURT: ....
> I cannot find any explicit reference [in the record of the original sentencing hearing] to what would happen to the period of time from July 17, 1990 [when Werber was transferred to federal custody] up until the date of sentencing, but the fact that I cannot ... find an explicit reference to it confirms my understanding that I was *thinking* that the Bureau of Prisons would deduct all of the time from July 17, 1990 up until the time of sentencing as they would clearly have done and have had to do under 3585(b) had there been no California case....
> And I do recall *thinking* at the time that the sentence ... would have been completed sometime this coming summer, that is the summer of 1994....
> Now, it's really not ... the point whether my misunderstanding was due to whatever arguments the defendant made or Mr. Wasserman may have made on his behalf or made on

behalf of the government. I will attribute it to my own mistake and oversight....

(App. at 247–48) (emphasis added).

**16.** Our decision is in accord with other Circuits that have examined the question. *United States v. Fahm,* 13 F.3d 447, 454 n. 8 (1st Cir.1994); *United States v. Fraley,* 988 F.2d 4, 5–6 (4th Cir.1993); *United States v. Daddino,* 5 F.3d 262, 264 (7th Cir.1993); *United States v. Mares,* 868 F.2d 151 (5th Cir.1989) (per curiam) ("A claim for time served prior to the date of a federal sentence is not cognizable in a proceeding pursuant to Fed.R.Crim.P. 36."); *United States v. Ferguson,* 918 F.2d 627, 630 (6th Cir.1990) (per curiam) (holding that change in date on which a federal sentence will be deemed to have commenced "is not within the ambit of Rule 36"); *see also United States v. Whittington,* 918 F.2d 149, 151–52 (11th Cir.1990) (holding court not authorized under Rule 36 to increase sentence three years after imposing it in order to conform sentence to intention of parties under plea agreement).

of the defendants in these cases were sentenced before the 1991 addition of Rule 35(c) to the Federal Rules of Criminal Procedure. As the Advisory Committee Notes for the 1991 Amendment explain, Rule 35(c) effectively codified the rule laid down in *Rico* and *Cook*, but shortened the time for correcting sentences to seven days. Furthermore, even if the *Rico–Cook* rule were still viable, neither Werber nor Schmidt could invoke it since both of their amended sentences were entered well after the time to appeal from their original sentences had already passed.

### III. CONCLUSION

To summarize: We hold that Rule 36 of the Federal Rules of Criminal Procedure provides no jurisdiction to correct an alleged error committed by the judge at sentencing, regardless of whether that correction is designed to vindicate an unstated assumption of the sentencing court.

Accordingly, we reverse and remand the case to the district court, with instructions to vacate the corrected judgments and to reinstate the original judgments against Schmidt and Werber.[17]

---

**17.** The government argues that Werber and Schmidt should seek further relief under 28 U.S.C. § 2241 in the district where they are imprisoned, in order to challenge the execution of their sentences. Such a proceeding would be appropriate if defendants were contesting the Bureau of Prisons' application of 18 U.S.C. § 3585. Their argument in the present case centers on the district court's exercise of its Guidelines authority to depart downwardly pursuant to U.S.S.G. §§ 5K2.0 and 5G1.3. To the extent that the defendants claim error in their original sentencing proceedings, the sentencing court would arguably have jurisdiction over their claims under 28 U.S.C. § 2255 ("A prisoner ... may move the court which imposed the sentence to vacate, set aside or correct sentence.").

On remand, the district court would have the authority to permit defendants to amend their Rule 36 motions to become § 2255 petitions. We intimate no view with regard to the merits of any possible habeas claims or the proper interpretation of U.S.S.G. § 5G1.3.

Neither do we indicate our views regarding any possible re-opening of Schmidt's case by the Parole Commission, in light of today's decision. *See supra* note 12.