**UNITED STATES of America Appellee,**

v.

**A–ABRAS INC., Defendant,**

**Osip Task, Defendant–Appellant.**

**Docket No. 98–1465.**

United States Court of Appeals, Second Circuit.

Argued March 9, 1999.

Decided July 19, 1999.

Henriette D. Hoffman, New York, New York (Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, New York, of counsel), for Defendant–Appellant Osip Task.

Stephen J. Ritchin, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney, Christine H. Chung, Assistant United States Attorney, Southern District of New York, New York, New York, of counsel), for Appellee United States of America.

Before: CARDAMONE, STRAUB, and KEITH*, Circuit Judges.

CARDAMONE, Circuit Judge:

North of Antarctica where the Atlantic and Pacific Oceans meet in the Waddell Sea, the conditions ordinarily are stormy and turbulent, so that navigating there must be done with great care. This appeal requires us to visit a turbulent and unsettled area of the law where federal power and state sovereignty meet, and that area too, must be entered with great care.

Defendant Osip Task (defendant or appellant) appeals the judgment of conviction and sentence entered on August 3, 1998 in the United States District Court for the Southern District of New York (Deborah A. Batts, J.), following his plea of guilty to supervising and controlling an illegal removal of asbestos, in violation of the Clean Air Act, 42 U.S.C. § 7413(c)(1). Among other penalties, the written judgment requires Task to pay a fine of $22,000 to the City of New York Environmental Control Board (Board) at the principal rate of $611.11 per month over three years.

Defendant contends on appeal that (1) the written judgment conflicts with the trial court's oral pronouncement of sentence, which did not include a federal fine, but simply imposed the obligation to pay a preexisting municipal fine as a condition of supervised release, and (2) this condition must be vacated because principles of federalism bar a federal court from requiring payment of a state or local fine at a specified rate. We reject defendant's second contention in the discussion that follows, but agree that the written judgment misstates his sentence. Accordingly, we affirm the sentence as orally pronounced, and remand the case for amendment of the judgment.

## BACKGROUND

Osip Task, a 51–year–old former resident of the Soviet Union and now a naturalized American citizen, formed A–Abras Inc., an asbestos removal business, in 1993. He was the sole owner and president of the company and succeeded in obtaining a license to perform asbestos removal work. Between January 24 and 27, 1995 Task and four assistants removed asbestos pipe insulation from the basement and boiler room of an apartment building at 327 Central Park West in Manhattan under a $20,-

---

* Hon. Damon J. Keith, U.S. Circuit Judge, U.S. Court of Appeals for the Sixth Circuit, sitting     by designation.

000 contract. On January 27, 1995 New York City police and inspectors from the City Department of Environmental Protection and City Department of Sanitation visited the work site. Based on what the inspectors observed regarding Task's methods of asbestos removal, the municipal charges that underlie the present appeal were filed. The Environmental Control Board determined that such removal was conducted in a manner that violated the Rules of the City of New York, Title 16, §§ 8–04a, –05a. Task admitted the charge, and on February 13, 1996 the Board ordered him to pay civil penalties totaling $22,000 (the City fine).

A year later a federal indictment was lodged against defendant individually and his company in the Southern District of New York arising from the asbestos removal at the same work site at Central Park West. Specifically, the indictment charged Task and A–Abras Inc. with failure to provide the U.S. Environmental Protection Agency with advance written notice of the planned removal, failure to wet the asbestos material adequately before stripping it from the pipes, and failure to keep the asbestos wet until it was collected and contained, all allegedly in violation of the Clean Air Act, 42 U.S.C. §§ 7412, 7413(c)(1), and a regulation promulgated thereunder, 40 C.F.R. § 61.145. On September 16, 1997 the government dismissed the charge against A–Abras Inc. by filing a *nolle prosequi,* and on October 24, 1997 Task pleaded guilty to a violation of § 7413(c)(1) pursuant to a written plea agreement with the government.

At sentencing, on July 27, 1998, defense counsel urged a lenient sentence because defendant already had been penalized for his wrongdoing by imposition of the City fine. Although conceding he had not yet paid it, Task said he was prepared to do so. The district court imposed sentence orally, giving defendant three months' imprisonment followed by three years' supervised release, with the special conditions that he serve three months' home confinement and "pay his fine of $22,000 to the City of New York Environmental Control Board at the principal rate of $611.11 a month." The sentencing court added, however, that it was "not enforcing or adding interest as a component of these special conditions." A week later, on August 3, 1998, written judgment was entered requiring, in part, that defendant "shall pay a fine of $22,000.00," payable to the "Board at the principal rate of $611.11 a month." This appeal followed.

## DISCUSSION

### I The Written Judgment

■ Appellant first points out that the written judgment, insofar as it imposed sentence, should be remanded to permit the district court to amend it to conform to the oral sentence. In particular, he notes that while his oral sentence required him to pay the City fine as a condition of supervised release, the judgment imposes a federal fine, payable to the Board and distinct from any preexisting fines. The government commendably concedes this point.

■ Where an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control. *See United States v. DeMartino,* 112 F.3d 75, 78–79 (2d Cir.1997). The written judgment of commitment serves merely as evidence of the court's authority to have its sentence executed. *See United States v. Werber,* 51 F.3d 342, 347 (2d Cir.1995); *United States v. Marquez,* 506 F.2d 620, 622 (2d Cir.1974). In cases involving such conflict, Rule 36 of the Federal Rules of Criminal Procedure authorizes the district court "at any time, to amend the written judgment so that it conforms with the oral sentence pronounced by the court." *Werber,* 51 F.3d at 347; *accord DeMartino,* 112 F.3d at 81 ("Had the district court simply inadvertently mistranscribed the oral sentence, Rule 36 would have been the

proper mechanism for relief."); *United States v. Corey,* 999 F.2d 493, 496–97 (10th Cir.1993). Remand for amendment of the written judgment pursuant to Rule 36 is therefore appropriate.

## II   The City Fine

Task next contends that the special condition requiring payment of the City fine must be vacated because principles of federalism bar a federal court from requiring payment of a state or local fine at a specified rate. Since he challenges his sentence on a purely legal issue, we review it *de novo.*

### A.   *Plain Error*

The government asserts that because appellant failed to object at sentencing to this condition of supervised release, we should not reach the merits absent plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. Task responds by pointing to his lack of notice of this condition prior to sentencing, as well as to the haste with which the condition was pronounced at sentencing. He cites in support of his response prior decisions of this Circuit that do not rely on the plain-error standard to vacate a sentence, but look instead at equitable considerations to accomplish that result, notwithstanding the defendant's failure to object. *See, e.g., United States v. Leung,* 40 F.3d 577, 585–86 & n. 2 (2d Cir.1994) (recognizing defendant's reluctance to suggest at sentencing that judge's remarks revealed ethnic bias).

■ Even assuming the validity of the government's assertion—that this issue is governed by the rule of plain error—our precedents nonetheless make clear that "an imposition of a sentence in violation of law would be plain error." *United States v. Eng,* 14 F.3d 165, 172 n. 5 (2d Cir.1994) (citing *United States v. Pico,* 966 F.2d 91, 92 (2d Cir.1992) (per curiam)); *accord United States v. Abrar,* 58 F.3d 43, 47 (2d Cir.1995) (same); *cf. United States v. Kinlock,* 174 F.3d 297, 299 (2d Cir.1999) ("[A]n improper order of restitution consti-

tutes an illegal sentence and, therefore, plain error."). Clearly a sentence that violated principles of federalism would constitute a sentence imposed in violation of law. But since, in any case, we reject appellant's federalism argument on the merits, we need not further discuss the government's assertion of the plain-error standard.

### B.   *Supervised Release in General*

■ Supervised release, also known as probation, is a "[s]entence imposed for commission of crime whereby a convicted criminal offender is released into the community under the supervision of a probation officer in lieu of incarceration." *Black's Law Dictionary* 1202 (6th ed.1990) (citing *State v. Fields,* 67 Haw. 268, 686 P.2d 1379, 1387 (1984)). Supervised release is not an entitlement a defendant possesses, but rather is an act of clemency a court extends to those it finds eligible. *Id.* Historically, the federal statutes governing supervised release were intended

> to accomplish the basic purpose of probation, namely to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate himself without institutional confinement under the tutelage of a probation official and under the continuing power of the court to impose institutional punishment for his original offense in the event that he abuse this opportunity.

*Roberts v. United States,* 320 U.S. 264, 272, 64 S.Ct. 113, 88 L.Ed. 41 (1943), *quoted in* 3 Charles Alan Wright, *Federal Practice and Procedure* § 529, at 140 (2d ed.1982).

Accordingly, trial courts traditionally have enjoyed broad discretion to tailor the conditions of probation to the particular circumstances of each case, provided that such conditions are reasonably related to the dual goals of rehabilitating the offender and protecting the public. *See* 21A Am.Jur.2d *Probation* § 907, at 171–73

(1998); 3 Wright, *Federal Practice and Procedure* § 529, at 146; *Developments in the Law—Alternatives to Incarceration,* 111 Harv. L.Rev. 1863, 1944–45 (1998) (*Alternatives*).

Within these constraints, the conditions of supervised release imposed by trial courts have run the gamut. For example, courts have imposed limits on offenders' associational freedoms, *see, e.g., United States v. Tolla,* 781 F.2d 29, 31–36 (2d Cir.1986) (religion teacher convicted of income tax evasion barred from teaching young people), and have required offenders to engage in various forms of community service, *see, e.g., United States v. Danilow Pastry Co.,* 563 F.Supp. 1159, 1166–72 (S.D.N.Y.1983) (bakery convicted of Sherman Act violations required to donate fresh baked goods to needy organizations). Other conditions defy easy categorization. *See, e.g., People v. McDowell,* 59 Cal.App.3d 807, 130 Cal.Rptr. 839, 842–44 (1976) (generally approving of condition that convicted purse snatcher wear tap shoes so as to alert prospective victims).

Still, appellate courts have vacated conditions attached to probation that were not justifiable within the rationales of offender rehabilitation and public protection. One category that has met with mixed results is where the condition is imposed to shame an offender. The instinct of some sentencing judges to shame an offender has roots derived from Puritan days, when Hester Prynne, convicted of adultery, was required as a condition of her probation to wear the scarlet letter "A," elaborately embroidered on the breast of her gown. *See* Nathaniel Hawthorne, *The Scarlet Letter* 52 (Dodd, Mead & Co.1948). A more recent example in the same genre, struck down on appeal, required an offender to wear a T-shirt reading "I am on felony probation for theft." *People v. Hackler,* 13 Cal.App.4th 1049, 16 Cal.Rptr.2d 681, 682, 686–87 (1993). Some shaming conditions of probation have been enforced. *See generally* Stephen P. Garvey, *Can Shaming Punishments Educate?,* 65 U. Chi. L.Rev.

733 (1998) (collecting cases). Examples of conditions not passing appellate muster include: the condition that a narcotics offender not sire children other than by his wife, *see United States v. Smith,* 972 F.2d 960, 961–62 (8th Cir.1992); the condition that an offender make reparation where the harm in question was caused by crimes to which a co-defendant and not the offender had pled guilty, *see Fiore v. United States,* 696 F.2d 205, 208–10 (2d Cir.1982); and the condition that a convicted draft dodger donate a pint of blood to the Red Cross, *see Springer v. United States,* 148 F.2d 411, 415–16 (9th Cir.1945). These examples, while obviously not exhaustive, illustrate the mixed results courts have reached in widely differing circumstances. *See generally Alternatives,* 111 Harv. L.Rev. at 1946–55; Mary Ann Hallenborg, Annotation, *Propriety of Probation Condition Exposing Defendant To Public Shame or Ridicule,* 65 A.L.R. 5th 187 (1999) (collecting cases and listing related annotations).

### C. *The Current Federal Scheme*

The current federal statute enumerates certain mandatory conditions of supervised release for federal offenders, including, for instance, the requirement that the offender "not commit another Federal, State, or local crime during the term of supervision." 18 U.S.C. § 3583(d) (1994). The statute also permits a district court to impose certain discretionary or "special" conditions of supervised release, stating

The court may order, as a further condition of supervised release, to the extent that such condition—

(1) is reasonably related to the [specified statutory] factors . . . ;

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentenc-

ing Commission pursuant to 28 U.S.C. 994(a);

. . . any other condition it considers to be appropriate.

*Id.* Section 3553 of the same title describes the factors that a court may consider in setting such special conditions

The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence. imposed—

. . .

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

*Id.* § 3553(a).

■ The U.S. Sentencing Guidelines generally mirror the factors set forth above in § 3553(a), including the requirement that any special condition of supervised release must be "reasonably related" to one or more of these factors. U.S. Sentencing Guidelines Manual § 5D1.3(b) (1997); *Abrar,* 58 F.3d at 46. We recognize, of course, that although sentencing courts properly have broad discretion in fixing the terms and conditions of supervised release to the broad goals and purposes set forth in § 3553(a) and § 5D1.3(b), that discretion is not without limits. *See United States v. Amer,* 110 F.3d 873, 883 (2d Cir.1997).

### III   Tenth Amendment Federalism Concerns

As noted above, appellant maintains that the special condition requiring payment of the City fine must be vacated because principles of federalism bar a federal court

from requiring payment of a state or local fine at a specified rate. Here, Task relies principally on two cases where we have invalidated a condition of supervised release requiring a defendant to surrender his professional license. *See United States v. Sterber,* 846 F.2d 842, 843–44 (2d Cir. 1988) (pharmacist's license); *United States v. Pastore,* 537 F.2d 675, 679–83 (2d Cir. 1976) (attorney's license); *id.* at 684 (Lumbard, J., concurring). In both cases, we held that the district court should have left resolution of the matter to the comprehensive state administrative schemes already in place for deciding whether the crimes in question warranted revocation of the professional licenses in question. In so ruling, we relied upon several considerations: federalism, the potential hardship to a defendant faced with loss of livelihood, the lack of standards to guide the district court's decision, and the opportunity for more effective review within the state administrative scheme.

Based on these precedents, Task urges us to invalidate the special condition requiring payment of the City fine, on grounds that principles of federalism require deference to New York City's own scheme for enforcing the fine. It is useful at this point to divide his argument into two analytic questions: first, whether principles of federalism bar the condition that appellant pay the City fine as required by New York City law; and, second, whether such principles bar the further condition that he pay the City fine at the rate of $611.11 per month.

### A.   *Federal Sentence Here Does Not Trespass On State Enforcement*

■ As to the first condition, we reject the argument that principles of federalism barred the district court from imposing the condition that he pay the City fine in accordance with New York City law. Such a condition does not interfere with the municipal enforcement scheme *per se;* it merely specifies the negative federal consequences that would flow from a decision

not to comply with the City scheme. To analogize to *Sterber* and *Pastore*, the effect here is as though the defendants in those cases had been required simply to comply with the states' decisions whether to revoke their professional licenses, rather than to surrender their licenses irrespective of the states' decisions. *Cf. Pastore*, 537 F.2d at 683 (noting trial court could have sent judgment of conviction to state's appellate division for disciplinary proceedings).

The notion that a federal entity may attach negative consequences to a failure to comply with state or local law is not a novel one. As stated earlier, a federal statute already directs that a federal defendant have included as a term of his supervised release an explicit condition that he not "commit another Federal, State, or local crime" during the term of probation. 18 U.S.C. § 3583(d). In *United States v. Wells Metal Finishing, Inc.*, 922 F.2d 54, 59 (1st Cir.1991) (*Wells*), the First Circuit affirmed a condition of supervised release that required compliance with a municipal fine arising from the same misconduct underlying the federal prosecution, on the grounds that the fine was reasonably related to the charged offense. And, in *United States v. Sage*, 92 F.3d 101, 107 (2d Cir.1996), we disposed of a Tenth Amendment challenge to a federal statute criminalizing the willful failure of a parent to pay a support obligation set by a state court order with respect to his child in another state, reasoning that the Tenth Amendment served as no obstacle to federal aid in the enforcement of a state court order imposing support payments interstate.

### B. *Federal Sentence Here Does Not Order State to Act*

■ In his federalism contention Task also relies on *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). That decision stands primarily for the principle, based on the Tenth Amendment, that "[t]he Federal Government may not compel the States to enact or administer a federal regulatory program." 505 U.S. at 188, 112 S.Ct. 2408. Because the states retain sovereignty under the Tenth Amendment, they may act independently of the national government "within their proper sphere of authority," and their officers may not be commandeered into enacting or administering federal law. *Printz v. United States*, 521 U.S. 898, 928, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). The Tenth Amendment, which states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people," U.S. Const. amend. X, must not be transgressed when a federal court exercises its considerable discretion to impose a sentence of supervised release. In the instant case, Task's argument goes, the condition of probation in the federal sentence unduly intrudes upon the City's authority to collect its own fines, and such action may well conflict with the City's comprehensive system for such collection. *See* New York City, N.Y., Charter § 1404(d)(1)(a), (e); *see also* N.Y. C.P.L.R. §§ 5015, 5201–52 (McKinney 1997).

Applying the principles of the Tenth Amendment, the Ninth Circuit has held that a federal court may not order the suspension of a state-issued driver's license as a condition of supervised release because such an order would unduly intrude upon a state's police powers and, in effect, require that the state itself suspend the license. *See United States v. Snyder*, 852 F.2d 471, 475 (9th Cir.1988); *United States v. Best*, 573 F.2d 1095, 1102–03 (9th Cir.1978).

On the other hand, the Fifth Circuit has held that the Tenth Amendment was not violated where federal probationers were barred from serving as a state law enforcement officer or from participating in state electoral campaigns during the term of probation, because those conditions were reasonably related to the nature of the offenses committed. *See United States v.*

*Brockway,* 769 F.2d 263, 264–65 (5th Cir. 1985) (sheriff convicted of brutalizing pretrial detainee and forbidden during probation to work as a law enforcement officer); *United States v. Tonry,* 605 F.2d 144, 148–50 (5th Cir.1979) (congressman pleaded guilty to violating Federal Election Campaign Act and forbidden during probation to run for political office); *cf. United States v. Villarin Gerena,* 553 F.2d 723, 726–27 (1st Cir.1977) (upholding probation condition requiring temporary resignation from Puerto Rico Police Force following conviction for abuse of office). In both decisions, the Fifth Circuit tested each condition of probation against the Tenth Amendment, holding that when the condition (1) does not extend beyond the term of probation, (2) depends solely on the probationer's actions, and (3) does not look to any state enforcement action, the condition of probation does not offend the Tenth Amendment even though it may limit the probationer's ability to engage in an activity regulated by the state. *See Brockway,* 769 F.2d at 265; *Tonry,* 605 F.2d at 150. We read these decisions of the Fifth and Ninth Circuits as applying the principle of federalism articulated in *New York* to limit the burdens that federal courts may place on states in the probation context.

### C. *No Tenth Amendment Transgression*

██ Consequently, when reviewing a sentence of probation, we determine its validity initially under the broad standard that it must bear a reasonable relationship to the rehabilitation of the offender and the protection of the public, as required by 18 U.S.C. §§ 3553(a) and 3583(d). In addition, the conditions that govern the continued existence of supervised release must depend solely on the offender's conduct and not on action by a state, keeping in mind that where a state has in place a comprehensive procedure for resolution of the condition probation imposes, it makes good sense to defer to that established procedure.

The condition of supervised release appellant now challenges is entirely consistent with our holdings in *Sterber* and *Pastore* and does not transgress those powers reserved to the states under the Tenth Amendment. In particular, the challenged condition does not compel or rely upon action or enforcement by the City as such, but rather requires appellant to act in compliance with the fine already imposed by the City under its existing scheme for enforcement. Hence, we see no reason to reverse the district court in this regard.

### IV Payment of the City Fine at a Specified Rate

██ The second question appellant raises, that is, whether, as a condition of supervised release, a federal court may require payment of a City fine at a rate not imposed by the City, is an unsettled question. Unlike the defendants in *Sterber* and *Pastore,* Task does not here assert that the condition, *i.e.,* payment of the fine, endangers his livelihood or ability to support his family, and those decisions do not make clear what outcome federalism alone requires absent such an assertion. Moreover, *Wells* did not address the federal imposition of a specific rate of payment not imposed by the municipality, and *Sage* explicitly relied on the fact that the Child Support Recovery Act of 1992(Act), 18 U.S.C. § 228 (1994), does not grant federal courts authority to disturb a domestic relationship that has been adjudicated by a state court or to modify any portion of a state court decree, *see* 92 F.3d at 107. The probation condition in *Sage* that required the husband to pay support to his former wife and two children did not offend the Tenth Amendment because the Act was expressly designed to aid the states in enforcing state court orders of support interstate. *See id.*

In the case at hand, by contrast, the required payment rate of $611.11 per month could readily be viewed as a modification of the City fine. In addition, although the condition purports only to reg-

ulate appellant's compliance with the City fine, one might argue by analogy to *Best* and *Snyder* that this condition intrudes upon municipal police powers by effectively requiring a rate of collection that the City itself might otherwise not have adopted.

Nevertheless, we affirm for two reasons. First, it is undisputed that conditions of supervised release need only be "reasonably related" to the nature of the offense and the circumstances of the defendant, U.S. Sentencing Guidelines Manual § 5D1.3(b)(1)(A), and that a district court enjoys broad discretion when setting the conditions of supervised release, *see Amer,* 110 F.3d at 883. Because the decision not to impose an additional federal fine seems to have been motivated by the fact that a fine already had been imposed by the City, we think it well within a federal sentencing court's discretion to impose conditions that would ensure that Task actually pays the City fine. Second, the only conflict with the City's enforcement scheme appellant hypothesizes is the possibility that the City may someday require a rate of payment different from that imposed by the district court. Were that to occur, it would be, in light of what we said earlier, most troubling. But, here, the government has conceded that in the event such a conflict arises, appellant may return to the district court to seek modification of the condition of supervised release pursuant to 18 U.S.C. § 3853(e). *See also Amer,* 110 F.3d at 884 (relying on possibility of modification); *Wells,* 922 F.2d at 59 (suggesting defendant may request modification if he cannot pay municipal fine).

## CONCLUSION

For the reasons stated, we therefore affirm the sentence orally imposed by the district court, and remand the case to that court for it to amend the judgment accordingly.