UNITED STATES of America,
Plaintiff–Appellee,

v.

John LAKATOS, Defendant–Appellant.

No. 00–50079.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 2001

Filed Feb. 8, 2001

Richard Novak, Office of the Federal Public Defender, Los Angeles, California, for the defendant-appellant.

Michael J. Raphael, United States Attorney's Office, Los Angeles, California, for the plaintiff-appellee.

Before: TROTT, THOMAS, and BERZON, Circuit Judges.

Opinion by Judge TROTT; Partial Concurrence and partial Dissent by Judge THOMAS.

TROTT, Circuit Judge:

Appellant John Lakatos challenges the United States District Court of the Central District of California's requirement that he pay his past-due child support obligations in full as a condition of his supervised release. Lakatos advances two arguments supporting his position: (1) a condition of supervised release directing a defendant to pay off a child support debt constitutes a *per se* violation of the United States Sentencing Guidelines ("the USSG"); and (2) even if a district court can require a defendant to liquidate a child support debt as a condition of supervised release, it may not contravene the express terms of a preexisting state court judgment or order in so doing. We have jurisdiction pursuant to 28 U.S.C. § 1291, and REVERSE and REMAND for resentencing.

## DISCUSSION

### I. Background

Lakatos was married to Deborah Peters ("Peters") from 1972 until 1979, at which time their marriage ended in divorce. During this marriage, Lakatos and Peters had two children. As a result of the divorce, Lakatos was ordered by an Idaho state court to pay child support of $150 per month, in addition to the children's medical insurance. Lakatos did not satisfy this obligation and successfully evaded Peters' attempts to collect child support for over a decade. With the help of a private investigator, Peters was able to locate Lakatos and, on January 20, 1995, obtain a judgment from an Idaho state court for

$85,873.10 against him for past due child support. The case was subsequently transferred for reciprocal enforcement from Idaho to California due to Lakatos' residency in that state.

On September 18, 1995, Lakatos pleaded guilty in the District of Idaho to conspiring to provide kickbacks to an employee of a United States Prime Contractor in violation of 18 U.S.C. § 371 and 41 U.S.C. §§ 53, 54. Lakatos was sentenced in the District of Idaho to ten-months' imprisonment and three-years' supervised release. One condition of Lakatos' supervised release was that he "support his dependents and meet other family responsibilities." In August, 1999, the United States District Court for the Central District of California approved a transfer of jurisdiction over defendant's supervised release from the District of Idaho.

In December, 1999, acting at the behest of the supervising United States Probation officer, Judge Audrey B. Collins issued a bench warrant in the Central District of California for Lakatos for violating the conditions of his supervised release imposed in the Idaho case. The warrant alleged two violations: (1) Lakatos had committed a misdemeanor by driving a vehicle while his license was suspended; and (2) Lakatos had submitted numerous false Monthly Supervision Reports in which he made representations that he was unemployed when in fact he was employed, and that he was living with and being supported by his mother when in fact he lived in a home he later valued at approximately $650,000. Furthermore, Lakatos had failed to make payments on the child support debt owing to Peters, which by December, 1999, had grown to over $100,000.

In a preliminary revocation hearing before Judge Collins, Lakatos pleaded guilty to the above violations. The case was then transferred in the same district to Senior Judge David W. Williams for a sentencing hearing on January 31, 2000. At this hearing, the court revoked Lakatos' term of supervised release, and, pursuant to the wishes of the parties, imposed a term of imprisonment of one day and an additional thirty-five months of supervised release. Over the objection of Lakatos, however, the district court imposed an additional condition of supervised release requiring Lakatos to pay his outstanding child support debt in full at least six months prior to the expiration of his supervised release. Judge Williams imposed the above condition despite a court order issued just eighteen days earlier from the Superior Court of California requiring Lakatos to pay his outstanding child support payments in $500 monthly increments, with two lump sum payments of $5000. This appeal followed.

## II. Standard of Review

A district court's decision to impose a condition of supervised release is typically reviewed for an abuse of discretion. *United States v. Bee,* 162 F.3d 1232, 1234 (9th Cir.1998). Whether a court is empowered to order payment of a child support obligation as a condition of supervised release, however, is a question of law reviewed de novo. *United States v. Miller,* 205 F.3d 1098, 1100 (9th Cir.2000).

## III. Payment of a Child Support Obligation is a Permissible Condition of Supervised Release

A district court is authorized by 18 U.S.C. § 3583(d) to impose conditions of supervised release. This statute enumerates certain mandatory conditions of supervised release for federal offenders and permits a district court to impose any discretionary conditions of supervised release that "it considers to be appropriate," including those conditions listed in 18 U.S.C. § 3563(b)(1)-(10) and (b)(12)-(20). 18 U.S.C. § 3583(d) (2000). A discretionary condition, however, can only be imposed to the extent that it:

(1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);

(2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and

(3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)....

*Id.*

The above-referenced factors set forth in 18 U.S.C. § 3553 include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for adequate deterrence to criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a) (2000); *see also United States v. Jackson,* 189 F.3d 820, 823 (9th Cir.1999). These factors parallel those advanced by the USSG. USSG Manual § 5D1.3(b) (1997).

■ Lakatos argues that this statutory framework prohibited the district court from requiring that he pay child support as a condition of his supervised release. Lakatos' argument fails for two reasons. First, a condition necessitating compliance with a court order that requires payment for the support and maintenance of a child is reasonably related to the factors enunciated in § 3553(a). For instance, requiring Lakatos to liquidate his child support obligations is clearly related to Lakatos' history and characteristics, promotes Lakatos' respect for his legal obligation to pay Peters, deters criminal conduct by precluding Lakatos from continuing to be delinquent on his payments, and protects Peters' and Lakatos' children from further crimes by Lakatos. This conclusion is bolstered by 18 U.S.C. § 3563(b) and USSG § 5D1.3(c)(4), which expressly authorize a district court to require a defendant, as a condition of supervised release, to (1) "support his dependents and *meet other family responsibilities,*" 18 U.S.C. § 3563(b)(1) (emphasis added), and (2) *"comply with the terms of any court order* or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, *requiring payments by the defendant for the support and maintenance of a child* or of a child and the parent with whom the child is living." 18 U.S.C. § 3563(b)(20) (emphasis added). The USSG describes these conditions as "standard conditions [that] are recommended for supervised release." USSG § 5D1.3(c)(4). Thus, Lakatos' argument is fatally undermined by the clear and unambiguous statutory language of 18 U.S.C. § 3563(b) and USSG § 5D1.3(c)(4).

Second, the fact that Lakatos' attorney previously conceded that the district court could order compliance with the child support order militates against our acceptance of a contrary argument now. At the January 31, 2000, sentencing hearing before Judge Williams, Lakatos' attorney stated:

Mr. Lakatos is willing to agree that this court has the jurisdiction—and there's no doubt about that—to order Mr. Lakatos to comply with [the California Superior Court's order that Lakatos pay child support to Peters]. And if he doesn't comply with the court order, then the Probation Officer can allege that in a petition, and in fact the probation [sic] Officer could have alleged it in the instant petition. Certainly there's no dispute about that.

This statement is a correct representation of the law and accurately reflects the position of this court. We therefore reject Lakatos' argument that a district court cannot require a defendant to comply with a preexisting child support order as a condition of supervised release.

**IV. The District Court Abused its Discretion in Imposing a Condition of Supervised Release that Conflicted with a Preexisting State Order**

■ The crux of Lakatos' argument at his January 31 sentencing hearing, and his

most persuasive argument on appeal, is that the district court erred in fashioning a child support payment schedule that conflicted with an express order issued by the California Superior Court just eighteen days prior to the sentencing hearing. The government counters that the condition imposed by the district court requiring Lakatos to pay his entire child support debt in less than thirty months was proper notwithstanding the preexisting California state court order. The government is mistaken.

■ The district court's actions were contrary to the statutory limitations implicit in 18 U.S.C. § 3563(b)(20). This section authorizes the district court to impose a condition of supervised release requiring the defendant to "comply with the terms of any court order ... pursuant to the law of a State ... requiring payments by the defendant for the support and maintenance of a child...." 18 U.S.C. § 3563(b)(20) (emphasis added). This language indicates that where compliance with a state child support order is made a condition of supervised release, the court must require compliance with the "terms of [the] court order," and not impose its own terms. While the conditions listed in § 3563(b) are not exclusive, it defies logic to conclude that the district court properly imposed a condition of supervised release concerning precisely the same subject matter contemplated by § 3563(b)(20) without following the express limitations articulated in that section. The above conclusion rings especially true in this case given that the statutory limitation reflects a federalism concern with ensuring that federal courts respect state court orders generally and the states' preeminent role in matters of child support particularly.

The government attempts to downplay any federalism concerns in this case by arguing: (1) that the federal and state orders are not inconsistent; and (2) that supervised release conditions do not violate principles of federalism even when enforcing orders that are wholly products of state law. Both claims lack merit.

The government's first contention—that the federal condition of supervised release and the state court enforcement order are not inconsistent—is clearly wrong. We cannot accept the government's suggestion that the district court's requirement that Lakatos liquidate the entire $100,000 debt in less than thirty months is consistent with the state court order allowing him to pay the debt at a rate of $500 per month.

The government's second argument—that the imposition of supervised release conditions cannot violate principles of federalism—is equally unavailing. In support of its position that no viable federalism claim can be raised by Lakatos, the government relies on the Second Circuit Court of Appeals' holding in *United States v. A–Abras Inc.,* 185 F.3d 26, 34 (2d Cir. 1999). The government's reliance is not only misplaced, but ironic.

While the facts in *A–Abras* generally parallel those in the case at bar, the devil is in the details. The defendant in *A–Abras* pleaded guilty in federal court to illegally removing asbestos, in violation of the Clean Air Act. At sentencing, the defendant asked for leniency, noting that the city of New York had already fined him for his conduct. The district court sentenced the defendant to three months imprisonment, followed by three years of supervised release, with the condition that he pay the city fine at a specified monthly rate. The defendant argued, *inter alia,* that this condition should be vacated because "principles of federalism bar a federal court from requiring payment of a state or local fine at a specified rate." *Id.* at 32.

In finding that the district court could specify the rate at which the defendant was required to repay the city fine, the *A–Abras* court offered two lines of reasoning. First, the court reiterated the well-accepted principle that "a district court enjoys broad discretion when setting the conditions of supervised release." *Id.* at 35. The Second Circuit opined that because

the district court's decision not to alter the total amount of the fine appeared to reflect the district court's deference to the city's decision, it was "well within [the] federal sentencing court's discretion to impose conditions that would ensure that [the defendant] actually pa[id] the City fine." *Id.*

The second reason advanced by the Second Circuit as to why the district court was justified in formulating a specified rate of repayment—and the reason that betrays the government's reliance on this case—was that no such rate had previously been established by the city. In fact, the court noted that had the city specified its own rate of repayment, the district court's actions "would be, in light of what we have said here, most troubling." *Id.* Furthermore, the court noted that its holding was premised on the fact that if the city elected in the future to impose a particular rate of repayment that conflicted with the rate set by the district court, the defendant could return to district court and seek a modification of his supervised release condition. *Id.*

The analysis in *A–Abras* suggests that the condition of supervised release imposed by the district court in the case at bar was improper. Specifically, the district court's imposition of a rate of repayment inconsistent with that prescribed by the state of California constitutes the precise course of conduct that the Second Circuit labeled as "most troubling." *Id.* Moreover, the discrepancy between the federal and state court orders in this case exemplifies the type of conflict that the Second Circuit suggested would entitle Lakatos to have the conflicting federal condition of supervised release modified pursuant to 18 U.S.C. § 228 (1994). *Id.*

Further discrediting the district court's actions in this case is the Second Circuit's statement in *A–Abras* that "where a state has in place a comprehensive procedure for resolution of the condition probation imposes, it makes good sense to defer to that established procedure." *Id.* This statement rings especially true in the area of child support given our commitment to the principle that "[f]amily relations are a traditional area of state concern, ... in which the state courts have a special expertise and experience," and our recognition of the fact that states possess "a vital interest in protecting the authority of the judicial system, so that its orders and judgments are not rendered nugatory." *H.C. v. Koppel,* 203 F.3d 610, 613 (9th Cir.2000) (internal quotations omitted).

Enforcement of the district court's condition that Lakatos pay his entire child support debt in twenty-nine months would clearly nullify the effect of the preexisting child support order issued by the California Superior Court. Thus, the district court's formulation of a repayment schedule at odds with the order of the California Superior Court qualifies as federal intervention into a "traditional area of state concern." *Id.*

Therefore, the limitations inherent in § 3563(b)(20), coupled with the legal guidance offered by the Second Circuit in *A–Abras* and our long-standing reluctance to nullify state court judgments involving traditional state functions, compel us to conclude that the district court erred in requiring Lakatos to pay his child support obligations at a rate different than that established by the California Superior Court.

**CONCLUSION**

While a district court can require a defendant to comply with a state child support judgment or enforcement order as a condition of supervised release, it may not negate the express terms of such a judgment or order in so doing. For the reasons stated above, we REVERSE and REMAND to the district court for resentencing.

THOMAS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion in all but one respect. The record in this case is

devoid of any record of either the California or Idaho child support orders or judgments. Thus, it is impossible for me to ascertain which state has the controlling order pursuant to the Uniform Interstate Family Support Act. *See* Cal. Family Code §§ 4911; Idaho Code §§ 7–1010. Thus, it is also impossible to determine whether the condition of supervised released negated the express terms of the operative state order. Thus, I would remand for further development of the record and reconsideration by the district court in light of our decision, without holding that the California court order is conclusive.