**UNITED STATES of America,
Appellee,**

v.

**Nancy JACQUES, Defendant–Appellant.**

**Docket No. 01–1348.**

United States Court of Appeals,
Second Circuit.

Argued May 7, 2002.

Decided: March 3, 2003.

Steven M. Statsinger, New York, New York (The Legal Aid Society, Federal Defender Division, New York, New York, of counsel), for Defendant–Appellant.

William F. Johnson, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney, Celeste L. Koeleveld, Assistant United States Attorney, Southern District of New York, New York, New York, of counsel), for Appellee.

Before: FEINBERG, KEARSE, and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge.

Nancy Jacques (defendant or appellant) has appealed a sentence imposing restitution. In sentencing appellant to make restitution, the sentencing court could have relied on one of two statutes that give it such authority, but it did not indicate which statute it relied upon. It may well be that sometimes the best choice is not to choose at all. We do not think such proposition helpful here. Yet, because the two statutes have different requirements, they have created a confusing anomaly for sentencing courts. We write in this case to remedy that anomaly.

On March 23, 2001 Jacques pled guilty to a single count of an indictment charging her with converting to her own use social security funds intended for another. *See* 42 U.S.C. § 1383a(a)(4) (1994). She was sentenced in the United States District Court for the Southern District of New York before Chief District Court Judge Michael B. Mukasey to three years probation and ordered to pay $17,407.25 in restitution.

On this appeal from her sentence, Jacques makes two separate challenges: first, she contends it was error to impose restitution given her present and future inability to pay; second, she avers that her right to be present at sentencing was violated because several conditions of her probation appeared in the written judgment of conviction, but were not mentioned orally at her sentencing. We vacate the sentence and remand this case to the district court to afford it an opportunity to articulate reasons for the order of restitution.

## BACKGROUND

Jacques' son, Christopher, was born in July 1994 with a brain disorder. In early 1995 defendant applied to the Social Security Administration for Supplemental Security Income (SSI) benefits on her son's behalf. The application was granted, and she began receiving monthly SSI checks. In response to allegations of neglect, Connecticut state authorities removed Christopher in March 1995 from the home Jacques shared with Wilfred Frazier, her common-law husband and Christopher's bi-

ological father, and placed the infant in foster care. On May 1, 1996 the Connecticut Superior Court for Juvenile Matters terminated Jacques' and Frazier's parental rights with respect to Christopher.

Between the time of Christopher's removal in 1996 and May 1998, Jacques continued to receive SSI checks—38 checks in all, totaling $17,407.25—and she continued to cash them even though Christopher was no longer in her custody. As a result of Jacques' conduct, the government charged her with four counts of social security fraud. *See* 42 U.S.C. § 1383a(a)(4) (prohibiting anyone, "having made application to receive any [social security benefit] for the use and benefit of another and having received it, [from] knowingly and willfully convert[ing] such benefit or any part thereof to a use other than for the use and benefit of such other person").

Defendant pled guilty, pursuant to a plea agreement, to a single count of SSI fraud. In exchange, the government agreed to drop the remaining three fraud counts and to recommend a two-point reduction in Jacques' offense level for acceptance of responsibility. The plea agreement also stipulated that defendant's total offense level should be seven, and that she should be in criminal history category I, which, under the United States Sentencing Guidelines (U.S.S.G.), yielded a sentencing range of zero to six months of imprisonment. In a rider to the plea agreement, Jacques agreed that "[t]he Court may order that the defendant make restitution under 18 U.S.C. § 3663."

The Presentence Investigation Report (presentence report), prepared by the Probation Office, contained the following information pertinent to this appeal. Jacques, a Haitian citizen, is a permanent resident of the United States. She was 29 years old at the time of the sentencing and is a high school graduate, but with virtually no work experience, other than working as a babysitter for $200 per week from 1987 to 1988. Her common-law husband Frazier supports her financially. Although Jacques and Frazier currently have no dependents, they did have five other children in addition to Christopher. One child died of sudden infant death syndrome in 1998, and the other four were removed from the couple's home by New York City welfare authorities.

According to the presentence report, Jacques has "no assets, no liabilities, and a net worth of zero." The Probation Office recommended that the sentencing court impose no fine because defendant was currently unable to pay one. Although it made no predictions with respect to her future earning ability, the Probation Office recommended that restitution be imposed in the amount of $17,407.25.

Defendant was sentenced on June 25, 2001. At the outset of the proceeding, the district court rejected the presentence report's recommendation that Jacques be ordered to receive mental health counseling. Chief Judge Mukasey did not make any findings with respect to her mental condition, but reasoned instead that such counseling was unrelated to the offense at issue.

The sentencing court agreed with the presentence report's calculation of the applicable range of zero to six months of imprisonment, but it declined to impose a prison sentence, choosing instead a three-year period of probation. It further ordered Jacques to "make restitution in the amount of $17,407.25 at the rate of 10 percent of her earnings during that period, and [to] sign a confession of judgment at the end of the probationary period in whatever amount remains unpaid." If she were to pay the full amount in less than three years, then probation would terminate at that point.

Although the district court did not mention at sentencing any conditions of probation other than the payment of restitution, the written judgment listed 19 additional conditions. Two of these conditions—that defendant not commit another federal, state or local crime and that she refrain from illegally possessing a controlled substance—were mandatory conditions of probation under the Sentencing Guidelines, applicable to all probationary sentences regardless of the underlying crime. *See* U.S.S.G. § 5B1.3(a)(1), (3) (2000). Thirteen other conditions were derived from the list of "standard" conditions that the Sentencing Guidelines recommend, but do not mandate for all defendants. *See* U.S.S.G. § 5B1.3(c)(1)-(13). One additional condition—that defendant not possess a firearm—was a "special" condition recommended by the Guidelines for all defendants convicted of felonies. *See* U.S.S.G. § 5B1.3(d)(1).

Under the heading "Special Conditions of Supervision" the written judgment stated that Jacques must, *inter alia,:* 1) comply with all Immigration and Naturalization Service (I.N.S.) obligations; 2) provide the Probation Office with access to her financial information; and 3) seek the permission of the Probation Office before incurring new credit charges or opening new lines of credit. Only the first of these three conditions was not derived from the Sentencing Guidelines. The second and third "special conditions of supervision" were the "special" conditions recommended by the Guidelines for all cases where a court orders restitution (requirement of access to financial information) or imposes an installment payment schedule (restriction on new credit). *See* U.S.S.G. § 5B1.3(d)(2), (3).

We turn now to the two challenges Jacques brings to her sentence.

## DISCUSSION

### I Restitution Order

A restitution order is reviewed for abuse of discretion. *See United States v. Salameh,* 261 F.3d 271, 276 (2d Cir.2001) (per curiam), *cert. denied,* 536 U.S. 967, 122 S.Ct. 2681, 153 L.Ed.2d 852 (2002) & —— U.S. ——, 123 S.Ct. 187, 154 L.Ed.2d 76 (2002). We have explained that, because a restitution order requires a balancing of what may be incompatible factors, "the sentencing court is in the best position to engage in such balancing, and its restitution order will not be disturbed absent abuse of discretion." *United States v. Ismail,* 219 F.3d 76, 78 (2d Cir.2000) (per curiam). Insofar as review involves an interpretation of law, we proceed *de novo. See United States v. Grant,* 235 F.3d 95, 99 (2d Cir.2000).

In this case the district court did not identify the statute it relied upon for its authority to order restitution. The government contends the order is authorized by either 42 U.S.C. § 1383a(b)(1), which pertains specifically to cases of SSI fraud, or the more general restitution provision of 18 U.S.C. § 3663. Appellant, in contrast, insists that 18 U.S.C. § 3663 does not authorize an order of restitution in her case.

Before addressing these arguments we note that in 1996 Congress made significant amendments to the general restitution provisions of Title 18. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, §§ 201–221, 1996 U.S.C.C.A.N. (110 Stat.) 1214, 1227–41. There are no relevant substantive differences between the present version of these provisions and the version in effect in 1995, when Jacques committed the offense of which she was convicted. Specifically, Title 18 still allows imposition of restitution under § 3663 "in any criminal

case" pursuant to a plea agreement and requires that, in determining whether to impose restitution under § 3663, the sentencing court consider the same factors that were mandatory in 1995, *i.e.*, the loss sustained by victims, financial resources of defendant, and financial needs and earning ability of defendant and her dependents. *Compare* 18 U.S.C. §§ 3663(a)(3), 3663(a)(1)(B)(i) (1994 & Supp. V 1999) *with* 18 U.S.C. §§ 3663(a)(3), 3664(a) (1994). Thus, we need not decide whether the 1996 amendments apply to Jacques' case. Our reasoning and conclusions here are equally applicable to cases involving pre- and post–1996 versions of Title 18. *Cf. United States v. Kinlock,* 174 F.3d 297, 299–300 n. 2 (2d Cir.1999) (finding the mandatory factors in the pre- and post–1996 Title 18 restitution provisions are "the same").

In claiming that 18 U.S.C. § 3663 does not apply to her case, appellant cites our decision in *United States v. Fore,* 169 F.3d 104 (2d Cir.1999). In *Fore,* we observed that § 3663(a)(1) authorizes a court to order restitution only when sentencing a defendant convicted of offenses listed in that subsection. *Id.* at 110. Violations of Title 42 of the United States Code, of which both Jacques and Fore were convicted, are not included in that list. *Id.* "Because the court's authority to order restitution depends upon the statute, th[e] omission [of Title 42 offenses] in Section 3663(a)(1) deprives the district court of the power to order restitution for ... social security fraud convictions." *Id.*

The present case is distinguishable from *Fore.* Unlike Fore, who was convicted by a jury, Jacques pled guilty. In a rider to the plea agreement, she agreed that the court "may order that [she] make restitution under 18 U.S.C. § 3663." This concession brings into play a subsection of the statute that was not at issue in *Fore,* one that provides that a sentencing court "may

also order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3); *see also United States v. Gottesman,* 122 F.3d 150, 151 (2d Cir.1997) (distinguishing § 3663(a)(1), which by its terms applies only to offenses specified in the statute, from § 3663(a)(3), which does not contain a similar limitation). Hence, we agree with the government that the district court may have relied on either 42 U.S.C. § 1383a(b)(1) or 18 U.S.C. § 3663 as its source of authority for the restitution order imposed in this case. As discussed below, a remand is necessary under either of these statutes.

### A. *Restitution Pursuant to 18 U.S.C. § 3663*

■ Title 18 expressly requires that, in deciding whether to impose restitution pursuant to § 3663, a district court consider (1) "the amount of the loss sustained by each victim as a result of the offense," (2) "the financial resources of the defendant," (3) "the financial needs and earning ability of the defendant and the defendant's dependents" (hereafter the mandatory § 3663 factors), and (4) "such other factors as the court deems appropriate." 18 U.S.C. § 3664(a) (1994); *see also* 18 U.S.C. § 3663(a)(1)(B)(i) (Supp. V 1999) (listing the factors district courts must consider under § 3663); *United States v. Ben Zvi,* 242 F.3d 89, 99 (2d Cir.2001) (same); *United States v. Thompson,* 113 F.3d 13, 15 (2d Cir.1997) (same).

■ Appellant asserts that the district court imposed restitution only in case she "str[uck] it rich" in the future and because of the "moral value" of requiring her to get a job. She argues that these were improper factors for a sentencing court to consider and that it failed to consider her ability to pay, as required under § 3663. She further maintains that the

district judge's statement that he was not "very confident" she would find a job constituted a finding that she would be unable to make restitution payments.

■ We agree with defendant that the district court's statements at sentencing lack the specificity required for us to be sure that it considered the mandatory § 3663 factors. "Although a sentencing court is not required to set forth its findings in detail, the record must reflect that it has considered the statutorily mandated factors." *United States v. Mortimer,* 52 F.3d 429, 436 (2d Cir.1995); *see also Kinlock,* 174 F.3d at 300–01 (noting the "record must demonstrate that the court considered the [mandatory § 3663] factors"); *United States v. Porter,* 90 F.3d 64, 67 (2d Cir.1996) (*Porter II* ) (same).

Yet, we cannot agree with appellant's interpretation of the district court's remarks at sentencing, and instead think it likely that on remand it will be able to support its current restitution order. Although Chief Judge Mukasey used the phrase "strike it rich," the context of the reference suggests that he did not rely on this possibility as a reason for imposing restitution. After hearing defense attorney's argument that restitution should not be imposed because of defendant's limited financial means, the district court asked, "I assume the government wants me to impose restitution against the possibility that she strikes it rich some day." The prosecutor responded that the reason for imposing restitution was that

> there is no indication why she hasn't been employed since 1988, and she suggests nothing about why she can't. She can certainly at least attempt to make a dent in [the amount that she stole] by getting employed in the next few years and making some payments in a percentage for the benefit of the child.

As this context makes clear, the reference to "striking it rich" was an invitation to the prosecutor to explain his reasons for advocating restitution despite Jacques' indigency, not a statement of the sentencing court's reasons for ultimately ordering restitution.

The sentencing transcript does not show that the district court considered Jacques' future earning ability. The only comment on this subject came in response to defense counsel's assertion that he lacked confidence that his client would be able to find a job. The district court replied, "I can't say that I'm very confident, but the effort has a certain moral value to it." We decline appellant's invitation to interpret this expression of doubt about her ability to secure employment as a finding of her inability to do so. *Cf. Porter II,* 90 F.3d at 68 ("When there is doubt about ability to pay, the court should order full restitution."); *United States v. Porter,* 41 F.3d 68, 70 (2d Cir.1994) (*Porter I* ) ("Despite the use of the word 'may,' we have held that the purpose of the restitution provision is to require restitution whenever possible.").

Moreover, the district court's reference at sentencing to the possibility that the restitution order would "spur" Jacques to get a job indicates that it did not view defendant's employment prospects as hopeless. This reference also indicates that the court expected the restitution payments to come not from her winning a lottery or some other windfall, but from her earned wages.

■ Further, we disagree with appellant's contention that the district court abused its discretion by considering the moral value of using restitution as a tool to encourage her to get a job. The restitution statute expressly allows a sentencing court to take into account, in addition to the mandatory § 3663 factors, "such other

factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i)(II) (Supp. V 1999). Jacques is a mother who stole over $17,000 meant to benefit her disabled infant son. Giving her an incentive to secure a source of income so that she can pay back the stolen money is a reasonable sentencing consideration and one plainly related to the offense.

We reject, in addition, Jacques' argument that because she has never held a job in the past and currently has no assets, it is unrealistic to expect her to pay back the money she appropriated. Appellant equates her being able to comply with the restitution order to a one-in-a-million miracle. We cannot adopt this characterization. Quite the contrary, we see no good reason why a 31–year–old high school graduate who is apparently in good physical health cannot find a job and pay back the $17,407.25 she took from her infant son. *Cf. Ben Zvi,* 242 F.3d at 100 ("[I]n the absence of a defendant showing a restricted future earnings potential by a preponderance of the evidence, it is entirely reasonable for a district judge to presume future earnings in ordering restitution.").

### B. *Restitution Pursuant to 42 U.S.C. § 1383a(b)(1)*

As noted earlier, the district court could have imposed restitution pursuant to 42 U.S.C. § 1383a, a provision describing criminal penalties for SSI fraud. Subsection (b)(1) of § 1383a states that a district court may impose full or partial restitution on a defendant who has committed SSI fraud "in [her] role as, or in applying to become, a representative payee ... on behalf of another individual" if "the violation includes a willful misuse of funds." § 1383a(b)(1). Unlike the provisions of 18 U.S.C. § 3663, there are no statutorily mandated factors for a sentencing court to consider when directing restitution pursu-

ant to 42 U.S.C. § 1383a(b)(1). Nevertheless, the parties agree that even under 42 U.S.C. § 1383a(b)(1) the district court must consider the defendant's ability to pay restitution. Because, as explained above, the record is unclear with regard to whether the district court determined that Jacques had the ability to pay restitution, we must vacate the sentence and remand this case.

### II   Conditions of Probation

Appellant's second challenge to her sentence is her contention that the district court erred in including in the written judgment conditions of probation that were not mentioned orally at her sentencing. The sentencing court told defendant that it would require her to pay restitution at the rate of 10 percent of her earnings during her three-year probation period and to sign a confession of judgment for any amount unpaid at the end of that period. The written judgment, however, included 19 additional conditions, all but one of which were derived from the lists of mandatory and recommended probation conditions in the Sentencing Guidelines. Jacques insists that the imposition of these additional conditions violated her right to be present at sentencing. Because this challenge to the sentence raises a legal question, we review it *de novo. See United States v. Manas,* 272 F.3d 159, 164 (2d Cir.2001), *cert. denied,* —— U.S. ——, 123 S.Ct. 533, 154 L.Ed.2d 434 (2002).

### A. *Circuit Law on Conflicts Between Oral and Written Sentences and Conditions of Supervised Release*

Both the Constitution and the Federal Rules of Criminal Procedure grant a criminal defendant the right to be present during sentencing. *See United States v. A–Abras Inc.,* 185 F.3d 26, 29 (2d Cir.1999); *see also* Fed.R.Crim.P. 43(a)

(requiring defendant's presence at initial appearance, arraignment, plea, every trial stage including impaneling of the jury and return of the verdict, and at sentencing).

In construing this right, we have held that "[w]here an unambiguous oral sentence conflicts with the written judgment, the constitutional right of a defendant to be present at sentencing dictates that the oral pronouncement of sentence must control." *A–Abras Inc.,* 185 F.3d at 29. When such a conflict exists, the proper remedy is to remand for amendment of the written judgment. *Id.* at 30. A good example of this principle, and a case defendant relies upon in her challenge to her conditions of probation, is *United States v. Marquez,* 506 F.2d 620 (2d Cir.1974). In *Marquez* the sentencing court orally imposed five years of prison and a $10,000 fine. The written judgment repeated the five-year imprisonment, but made the $10,000 fine a committed, rather than an ordinary, fine. The consequence of this was that defendant was "to stand committed until the fine [was] paid or he [was] otherwise discharged according to law." *Id.* at 621. Because an actual conflict existed between the oral and the written sentences, we remanded so that the oral sentence could prevail.

The government urges we decide this issue consistently with rulings made on conditions of supervised release. In the supervised release context we have held that the mandatory and standard Guidelines conditions are basic administrative requirements, generally imposed by sentencing courts, and plainly appropriate to implement supervised release, and, therefore, need not be mentioned orally at sentencing. *See United States v. Truscello,* 168 F.3d 61, 62 (2d Cir.1999). Where the conditions are neither mandated nor recommended by the Guidelines or where they are not a basic administrative requirement, this rationale has no application. Such conditions in a written judgment do not serve to clarify ambiguity in an oral sentence, but instead place additional burdens on a defendant and necessitate a remand so that the terms of the oral sentence may prevail.

A sentence of probation by its very nature requires certain conditions to effectuate its purpose. In *Truscello* the written judgment listed 14 additional conditions, beyond the sentence imposed orally, that were either mandatory or recommended "standard" supervised release conditions under the Sentencing Guidelines. 168 F.3d at 62. We rejected defendant's argument that the 14 added conditions should be stricken from his sentence because they had not been mentioned at his sentencing hearing. *Id.* at 63. We further held "the difference between the oral pronouncement of sentence and the written judgment did not amount to a conflict," but rather the written judgment clarified "what the oral pronouncement meant by 'supervised release.'" *Id.*

After oral argument in the instant case, we decided *United States v. Asuncion–Pimental,* 290 F.3d 91 (2d Cir.2002) (per curiam), and *United States v. Thomas,* 299 F.3d 150 (2d Cir.2002), explaining the applicability of *Truscello* to supervised release conditions that are not among the mandatory or standard conditions set forth in the Guidelines. First, in *Asuncion–Pimental,* we extended *Truscello* to the condition that defendant not possess a firearm or destructive device. This condition is recommended by the Sentencing Guidelines for all defendants convicted of a felony. *See* U.S.S.G. § 5D1.3(d). We reasoned that these so-called "special" conditions, recommended for specific types of cases or situations by U.S.S.G. § 5D1.3(d), if imposed in accordance with the Guidelines' recommendations, are no different

from the standard conditions recommended by U.S.S.G. § 5D1.3(c) for all cases. For instance, because the *Asuncion–Pimental* defendant was convicted of a felony, the prohibition against firearm or destructive device possession in his case was "as standard as those conditions recommended in U.S.S.G. § 5D1.3(c)." *Asuncion–Pimental,* 290 F.3d at 95.

In *Thomas,* we extended *Truscello* further to supervised release conditions that, although not stated in the Sentencing Guidelines, are basic administrative requirements necessary to the operation of the supervised release system. There we upheld the inclusion in the written judgment of the requirements that defendant report to the nearest probation office within 72 hours of release from custody and be supervised in the district of his residence. *Thomas,* 299 F.3d at 154.

We declined to extend *Truscello,* however, "to conditions of supervision that are neither mandatory under, nor specifically recommended by, the Guidelines and that are not a basic requirement for the administration of supervised release." *Id.* at 155. We reasoned that "such terms do not simply clarify ambiguity in the oral imposition of supervised release, [but] place additional burdens on the defendant that are neither necessary to nor a foreseeable result of the imposition of supervised release." *Id.* Accordingly, we found impermissible the inclusion in the written judgment of the condition that the defendant "not possess any identification in the name of another person or in any matter assume the identity of any other person." *Id.* at 152. We recognized that this prohibition partially "augment[ed] the mandatory requirement that [defendant] not commit another federal, state, or local offense." *Id.* at 154–55. Because the condition "also incorporate[d] non-criminal behavior," however, we found that it was

"not necessary to clarify or carry out any of [the Guidelines'] mandatory or standard conditions," and, therefore, was "not a basic requirement for the administration of [defendant's] release." *Id.* at 155.

### B. *Applicability of the* Truscello *Line of Cases to Conditions of Probation*

Appellant urges that *Truscello* should not apply to her case because *Truscello* involved supervised release rather than probation. We do not agree. The reasoning and holdings of *Truscello* and its progeny are fully applicable to a sentence of probation. To make our reasoning clear, we analyze briefly the relationship between probation and supervised release.

Supervised release, which has by and large replaced parole, consists of postconfinement monitoring by a sentencing court. A defendant on supervised release must comply with the conditions imposed on him on pain of having his supervised release status revoked and being returned to prison. *See Johnson v. United States,* 529 U.S. 694, 697, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000). One inherent difference between supervised release and probation is that in the former a defendant will have served time in prison for his offense, while in the latter he will not have served time. Probation therefore, unlike supervised release, is an alternative to imprisonment. *Id.* at 711–12 n. 11, 120 S.Ct. 1795.

Despite these inherent differences, supervised release and probation are administered under provisions set out in the Sentencing Guidelines that mandate and recommend mandatory, standard, and special conditions nearly identical under each type of sentence. *Compare* U.S.S.G. § 5D1.3 (conditions of supervised release) *with* U.S.S.G. § 5B1.3 (conditions of probation). Thus, although the inherent differences between the two punishments may be significant in some contexts—for

example, resentencing, *see United States v. Vogel*, 54 F.3d 49, 51 n. 1 (2d Cir.1995) (per curiam)—in the context of deciding whether certain conditions must be announced orally at sentencing, the distinction between them is one that makes no real difference.

Appellant asserts that because probation can be either supervised or unsupervised, it does not—unlike supervised release—necessarily entail conditions. This point is unpersuasive because lack of supervision is not equivalent to lack of conditions. *See United States v. Caputo*, 978 F.2d 972, 977 (7th Cir.1992) (explaining that unsupervised probation, which is more lenient than supervised probation, "is functionally equivalent to conditional discharge"). Further, the Sentencing Guidelines provisions listing recommended and mandatory conditions of probation do not distinguish between supervised and unsupervised probation. *See* U.S.S.G. § 5B1.3.

As a consequence, we hold that it is not reversible error for a sentencing court to impose probation conditions without mentioning them orally at sentencing where the challenged conditions clarify, rather than conflict with, the sentence imposed orally. Further, the determination whether the oral and written sentences are in conflict shall be governed by the *Truscello* line of cases.

### C. Application to Jacques' Case

■ Given that our supervised release precedents govern this case, we now turn to the specific probationary conditions imposed on Jacques to determine whether they clarify or conflict with the sentence imposed orally. The two mandatory conditions—that Jacques not commit another federal, state or local crime or illegally possess a controlled substance—and the 13 "standard" conditions recommended by the Guidelines for all criminal cases are per-

missible clarifications of the oral sentence of probation. *See Truscello*, 168 F.3d at 63.

■ Three other conditions—that Jacques not possess a firearm, provide the Probation Office with access to her financial information upon request, and seek the Probation Office's permission before incurring new credit charges or opening any new lines of credit—were derived from the Guidelines' list of "special" conditions. The prohibition against firearm possession was imposed because Jacques was convicted of a felony. *See* U.S.S.G. § 5B1.3(d)(1). The Guidelines recommend imposing the requirement of access to financial information on all defendants who, like Jacques, are ordered to pay restitution. *See* U.S.S.G. § 5B1.3(d)(3). The prohibition against unauthorized new credit is recommended for those cases where the district court imposes an installment schedule for restitution payments. *See* U.S.S.G. § 5B1.3(d)(2). Because these conditions were ordered in accordance with the Guidelines' recommendations, under *Asuncion–Pimental*, their inclusion in the written judgment presents no conflict with the oral sentence and is permissible.

■ The district court imposed on Jacques one condition that was not derived from the Guidelines' lists of "mandatory," "standard," or "special" probation conditions—the condition that she comply with all I.N.S. obligations. This condition, however, does not impose on Jacques any new obligations because as a permanent resident alien she must comply with I.N.S. obligations regardless of her present sentence. Accordingly, this last condition also amounts to a clarification of the requirement that she obey the law. In sum, under *Truscello, Asuncion–Pimental* and *Thomas,* the inclusion in the written judgment of the 19 probation conditions not

mentioned orally did not violate Jacques' right to be present at sentencing.

### D. *Suggested Modification of Conditions*

Finally, we note that although we find no error in the choice of conditions of probation, the district court should consider, on remand, modifying one of those conditions in light of information revealed for the first time on appeal. Defense counsel informed us at oral argument that Frazier, Jacques' common-law husband, has been convicted of a felony. This fact is not reflected in the record before the district court. In light of it, one of the standard probationary conditions—that Jacques not associate with known felons—could interfere with her right to maintain a relationship with her common-law husband. *See Roberts v. U.S. Jaycees,* 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984) (recognizing freedom to "enter into and maintain certain intimate human relationships" is a constitutional right); *Sanitation & Recycling Indus., Inc. v. City of N.Y.,* 107 F.3d 985, 996 (2d Cir.1997) (explaining that the Constitution "guarantees an individual the choice of entering an intimate relationship free from undue intrusion by the state" and that "[a]t a minimum, [this right] extends to relationships that 'attend the creation and sustenance of a family—marriage, childbirth, the raising and education of children, and cohabitation with one's relatives.'" (citing *Roberts,* 468 U.S. at 617–19, 104 S.Ct. 3244)).

Because constitutional difficulties could arise if the associational condition were construed to interfere with Jacques' relationship with her family, we do not think the district court intended to interfere with Jacques' established familial relationships and do not read the condition as applying to Jacques' association with Frazier. *See*

*United States v. Loy,* 237 F.3d 251, 270 (3d Cir.2001). Notwithstanding our reading, the district court is free to modify the associational condition on remand and to exclude Frazier explicitly from the category of people with whom Jacques cannot associate during her period of probation. *Cf. United States v. Bryce,* 287 F.3d 249, 253 (2d Cir.) (explaining that on remand for resentencing, the district court is free to reconsider any part of the sentence to the extent not prohibited by the appellate court), *cert. denied,* —— U.S. ——, 123 S.Ct. 117, 154 L.Ed.2d 143 (2002).

### CONCLUSION

For the foregoing reasons, we vacate defendant's sentence and remand the case to the district court for resentencing in accordance with this opinion.