22-3155-cr
*United States v. Meadows*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of March, two thousand twenty-five.

Present:

> ROBERT D. SACK,
> WILLIAM J. NARDINI,
> MYRNA PÉREZ,
> *Circuit Judges*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

v.                                                        22-3155-cr

JQUANN MEADOWS,

> *Defendant-Appellant*.[*]

---

| | |
|---|---|
| For Appellee: | WILLIAM C. KINDER (Stephen J. Ritchin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY. |
| For Defendant-Appellant: | ALLEGRA GLASHAUSSER, Assistant Federal Defender, Federal Defenders of New York, Inc., Appeals Bureau, New York, NY. |

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in part** and **REMANDED in part** with instructions to amend the written judgment.

Defendant-Appellant Jquann Meadows appeals from a judgment entered December 2, 2022, following his guilty plea to one count of possessing a firearm after having been convicted of a felony, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. The district court sentenced Meadows to a 48-month term of incarceration, followed by three years of supervised release. The district court calculated a U.S. Sentencing Guidelines range of 46 to 57 months' imprisonment, incorporating an enhancement based on its finding that Meadows had previously been convicted of "a controlled substance offense." U.S. Sent'g Guidelines Manual § 2K2.1(a)(4)(A). The district court also imposed special conditions of supervised release. The first of the "Special Conditions of Supervision" requires Meadows to submit to certain searches upon reasonable suspicion of a violation of the terms of his release (the "search condition"). The second condition requires Meadows to participate in drug treatment, including drug testing (the "drug treatment condition").

Meadows raises three issues on appeal: (1) whether § 922(g)(1) violates the Second Amendment to the United States Constitution as applied to Meadows; (2) whether the district court erred in applying the enhancement under U.S.S.G. § 2K2.1(a)(4)(A) because Meadows was not convicted of a "controlled substance offense"; and (3) whether the district court erred in imposing the search condition and drug treatment condition of supervised release. We assume the parties' familiarity with the remaining facts and procedural history, which we recount only as necessary to

2

explain our decision. For the following reasons, we remand with instructions to the district court to amend the special conditions of supervised release and otherwise affirm the judgment.

## I. Constitutionality of § 922(g)(1)

Meadows challenges the constitutionality of the statute under which he was convicted, 18 U.S.C. § 922(g)(1), under the Second Amendment. We need not resolve that constitutional question because, as we explain below, there was no "plain error" in the application of § 922(g)(1) to Meadows.

The parties agree that plain error review applies because Meadows raises this issue for the first time on appeal. *See United States v. Le*, 902 F.3d 104, 109 (2d Cir. 2018). Among other things, a "plain error" generally must be "clear or obvious, rather than subject to reasonable dispute." *See United States v. Moore*, 975 F.3d 84, 90 (2d Cir. 2020) (quoting *United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019)). "[W]e typically will not find such error where the operative legal question is unsettled, including where there is no binding precedent from the Supreme Court or this Court." *United States v. Napout*, 963 F.3d 163, 183 (2d Cir. 2020) (citation omitted).

There was no plain error here because it is neither "clear" nor "obvious" that § 922(g)(1) is unconstitutional in light of the recent Supreme Court decisions in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024). In *United States v. Bogle*, decided before *Bruen* and *Rahimi*, we upheld the constitutionality of § 922(g)(1) against a Second Amendment challenge. 717 F.3d 281, 281–82 (2d Cir. 2013). Since *Bruen*, neither we nor the Supreme Court has revisited this issue, and other circuits have reached varying results, though most have upheld § 922(g)(1) against constitutional challenges.[1] *See*

---

[1] *See, e.g., Range v. Att'y Gen. U.S. of Am.*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (holding § 922(g)(1) unconstitutional as applied), *cert. granted, judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706 (2024), *and*

*United States v. Whab*, 355 F.3d 155, 158 (2d Cir. 2004) ("[A]n error cannot be deemed 'plain,' in the absence of binding precedent, where there is a genuine dispute among the other circuits."). We therefore join prior decisions of this Court that rejected similar constitutional challenges to § 922(g)(1) under the plain-error standard.[2]

## II. Controlled Substance Offense Enhancement

Meadows next challenges the district court's application of an enhancement under the U.S. Sentencing Guidelines for unlawfully possessing a firearm after having committed a "controlled substance offense." We need not decide the merits of this argument because, as we explain below, even if the district court erred in applying that enhancement, any such error would have been harmless.

In 2018, Meadows was convicted of possessing cocaine, among other substances, in violation of Georgia law. The appropriateness of the enhancement at issue turns on whether the definition of "cocaine" under Georgia law is broader than under federal law. That, in turn, is a

*adhered to sub nom. Range v. Att'y Gen. of U.S.*, 124 F.4th 218 (3d Cir. 2024) (en banc); *United States v. Hunt*, 123 F.4th 697, 700 (4th Cir. 2024) (holding § 922(g)(1) constitutional as applied); *United States v. Contreras*, 125 F.4th 725, 733 (5th Cir. 2025) (holding § 922(g)(1) constitutional on its face and as applied); *United States v. Williams*, 113 F.4th 637, 662 (6th Cir. 2024) (same); *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024) (assuming "for the sake of argument that there is *some* room for as-applied challenges" to § 922(g)(1) but holding the statute constitutional as applied to defendant who possessed firearm in violation of condition of parole (emphasis in original)); *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2710 (2024), *vacated*, No. 22-2870, 2024 WL 3768055 (8th Cir. Aug. 8, 2024), *and adhered to*, 110 F.4th 1120 (8th Cir. 2024) (holding § 922(g)(1) constitutional as applied); *Vincent v. Garland*, 80 F.4th 1197, 1199–202 (10th Cir. 2023) (holding § 922(g)(1) constitutional as applied), *cert. granted, judgment vacated*, 144 S. Ct. 2708 (2024), *and adhered to sub nom. Vincent v. Bondi*, 127 F.4th 1263 (10th Cir. 2025); *cf. also United States v. Duarte*, 101 F.4th 657 (9th Cir.) (holding § 922(g)(1) unconstitutional as applied), *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. 2024).

[2] *See, e.g.*, *United States v. Brillon*, No. 22-2956, 2024 WL 392949, at *1 (2d Cir. Feb. 2, 2024); *United States v. Ogidi*, No. 23-6325, 2024 WL 2764138, at *1 (2d Cir. May 30, 2024); *United States v. Barnes*, No. 23-6424, 2024 WL 5103316, at *1 (2d Cir. Dec. 13, 2024); *United States v. Caves*, No. 23-6176, 2024 WL 5220649, at *1 (2d Cir. Dec. 26, 2024); *United States v. Leiser*, No. 23-6665, 2024 WL 5220689, at *2 (2d Cir. Dec. 26, 2024); *United States v. Ruhl*, No. 21-2892, 2025 WL 262309, at *1 (2d Cir. Jan. 22, 2025); *United States v. Hardee*, No. 23-6398, 2025 WL 323339, at *1 (2d Cir. Jan. 29, 2025); *United States v. Disla*, No. 23-7026, 2025 WL 602147, at *1 (2d Cir. Feb. 25, 2025); *United States v. Simmons*, No. 23-6771, 2025 WL 615459, at *5 (2d Cir. Feb. 26, 2025).

question of both statutory interpretation and chemistry, on which Meadows submitted scientific expert evidence in the district court. If Meadows were correct that Georgia's definition is broader than the federal definition, then his Georgia conviction would not have been a "controlled substance offense" for purposes of the relevant Sentencing Guideline, under our categorical approach. *See United States v. Townsend*, 897 F.3d 66, 72 (2d Cir. 2018). The district court agreed with the government that Meadows's prior conviction was a "controlled substance offense" and, applying the enhancement, calculated an advisory Guidelines range of 46 to 57 months. Meadows argues that the correct calculation, without the enhancement, was 27 to 33 months.

At bottom, Meadows challenges the procedural reasonableness of his sentence. *United States v. Hunt*, 82 F.4th 129, 142 (2d Cir. 2023) ("A sentence is procedurally unreasonable if the district court improperly calculates the Sentencing Guidelines range . . . ." (internal quotation marks and citation omitted and alterations adopted)). We review such challenges for abuse of discretion, which includes "*de novo* review of questions of law . . . and clear error review of questions of fact." *United States v. Vinales*, 78 F.4th 550, 552 (2d Cir. 2023) (quoting *United States v. Yilmaz*, 910 F.3d 686, 688 (2d Cir. 2018)). However, "[i]f we 'identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing.'" *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (quoting *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009)).

Any error in the district court's Guidelines calculation was harmless because the record indicates that the district court would have sentenced Meadows to 48 months' incarceration even under Meadows's Guidelines range calculation. The district court acknowledged its responsibility to calculate a range, as "a necessary first step" before getting to the "heart of th[e] inquiry," but

5

made clear it was not swayed by either party's calculation. App'x at 41; *see id.* at 61 ("[W]hile I must consider a guidelines range, ultimately I have to decide what a reasonable sentence is."). The district court also acknowledged uncertainty about the issue Meadows raises on appeal—whether his prior conviction counts as a "controlled substance offense"—but stated it did not need more time or briefing on that issue before it could "decide what a reasonable sentence is." *Id.* at 61.

Ultimately, the district court made clear that its decision was driven by its view of "the seriousness of this current offense, possession of a loaded firearm" as well as "what's necessary for individual deterrence and general deterrence and protection of society among all the other aspects of a [18 U.S.C. §] 3553 analysis." *Id.* In conducting that analysis, the district court stated that its decision was driven, not by Meadows's drug possession conviction, but by his history of committing firearms offenses and then, after serving his sentence, "emerging and recommitting . . . , among other offenses, a firearms offense again." *Id.* The district court emphasized its view that Meadows's conduct was "extraordinarily dangerous" and merited a significant sentence to promote deterrence, as it involved possessing "a loaded firearm on the street." *Id.* at 61–62. That explanation makes "clear that the judge based the sentence he or she selected on factors independent of the Guidelines." *Molina-Martinez v. United States*, 578 U.S. 189, 200 (2016).[3]

## III. Special Conditions of Supervised Release

Finally, Meadows challenges two special conditions of supervised release: the search condition and the drug treatment condition. As we explain below, the portion of the search

---

[3] To be clear, we do not suggest that the district court's statement, "I think the sentence would be the same," insulates its Guidelines calculation from appellate review on its own. App'x at 61. Rather, the totality of the record indicates that the Guidelines calculation "made no difference to [the district court's] determination" of the appropriate sentence. *Cf. United States v. Seabrook*, 968 F.3d 224, 233–34 (2d Cir. 2020) ("We note that the district court cannot insulate its sentence from our review by commenting that the Guidelines range made no difference to its determination when the record indicates that it did."); *United States v. Feldman*, 647 F.3d 450, 460 (2d Cir. 2011) (rejecting the conclusion that "criminal sentences may or should be exempted from procedural review with the use of a simple incantation").

condition requiring him to submit to searches of his electronic devices, papers, and effects, and the entire drug treatment condition, must be removed from the judgment on remand.

### A. Applicable Law

Courts have "broad latitude to design their own 'special conditions'" of supervised release, *United States v. Sims*, 92 F.4th 115, 120 (2d Cir. 2024), provided they are consistent with certain enumerated purposes of sentencing and "involve[] no greater deprivation of liberty than is reasonably necessary" to pursue those purposes. 18 U.S.C. § 3583(d)(2); U.S. Sent'g Guidelines § 5D1.3(b). Sentencing courts therefore must "carefully balance the goals of supervised release while remaining mindful of the life-altering effects their judgments have on defendants, their families, and their communities." *Sims*, 92 F.4th at 120.

There are two relevant obligations on sentencing courts when imposing special conditions. First, special conditions of supervised release must be tailored to the individual person before the sentencing court. *Id.* at 123 ("[T]he court is required to make findings specific to the defendant, connecting those findings to the applicable § 3553(a) factors that would justify including the special condition in this case." (collecting cases)). The district court must explain its reasoning for each special condition on the record, but even if it does not, we may uphold the condition where the reasoning and relation to the objectives of sentencing are "self-evident in the record." *United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018) (internal quotation marks and citation omitted).

Second, the district court must "orally pronounce special conditions of supervised release in open court," so that a defendant has "an opportunity to obtain a clear understanding of the terms of the sentence and to object to or seek clarification of its components." *United States v. Rosado*, 109 F.4th 120, 124 (2d Cir. 2024) (citing *Sims*, 92 F.4th at 125). A written order may permissibly differ from a spoken sentence where the order merely adds "basic administrative requirements that

are necessary to supervised release" or "clarif[ies] the terms of the spoken sentence." *Id.* (internal quotation marks omitted) (quoting *United States v. Washington*, 904 F.3d 204, 208 (2d Cir. 2018)). "But we do not make such allowances where, as here, the modifications or additions impose new 'burdensome punishments or restrictions,' or where there is 'a substantive discrepancy between the spoken and written versions of' the sentence." *Id.* at 124–25 (first quoting *United States v. Rosario*, 386 F.3d 166, 168 (2d Cir. 2004); and then quoting *Washington*, 904 F.3d at 208).

We review the propriety of conditions of supervised release for abuse of discretion, *Sims*, 92 F.4th at 122, which includes de novo review of questions of law. *United States v. Reeves*, 591 F.3d 77, 80 (2d Cir. 2010) (citing *United States v. Johnson*, 446 F.3d 272, 277 (2d Cir. 2006)). One such question of law that "[w]e review de novo" is "whether the spoken and written terms of a defendant's sentence differ impermissibly." *Washington*, 904 F.3d at 207 (citing *United States v. Jacques*, 321 F.3d 255, 262 (2d Cir. 2003)). "In principle, we review an issue of law for plain error when the defendant has failed to raise the issue in the district court." *Id.* (citing *United States v. Sofsky*, 287 F.3d 122, 125 (2d Cir. 2002)). "But when the point of law on appeal is a term of the defendant's sentence and the defendant lacked prior notice in the district court that the term would be imposed, we will review the issue de novo even if the defendant failed to raise an objection in the district court." *Id.*; *see also Rosado*, 109 F.4th at 124.

## B. Search Condition

The special search condition at issue requires Meadows to submit his "person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects" to warrantless searches upon reasonable suspicion of a violation of a supervised-release condition or unlawful conduct. App'x at 68. As we explain below, the portion of that condition that covers Meadows's "papers, computer, other electronic

8

communication, data storage devices, cloud storage or media, and effects," is procedurally improper both because it is unsupported by the record and because the district court did not pronounce it at sentencing.[4] However, neither infirmity affects the remainder of the condition.

First, the district court did not explain its reasoning for imposing a search condition, and its reasoning for extending that condition to Meadows's electronic devices, papers, and effects is not self-evident. As described above, the record makes clear that the district court's sentencing was driven by Meadows's history of unlawfully possessing firearms, even after completing sentences for similar offenses. *Id.* at 61–62. The district court emphasized the seriousness of such offenses, the risk they pose to society, and the need for deterrence. *Id.* It is therefore self-evident why the district court would require Meadows to submit to searches that might lead to the discovery of unlawfully possessed firearms, such as searches of his "person," "property, residence, [and] vehicle." *Id*. at 68. But nothing in the record suggests that searches of Meadows's electronic devices, papers, and effects are related to the offense of conviction, or would further any relevant goal of sentencing, such as by deterring or protecting the public from future gun crimes. *See* 18 U.S.C. §§ 3553(a)(2)(B)–(C), 3583(d).

Second, the district court failed to orally pronounce the search condition in a manner that gave Meadows notice that the condition would extend to all of his electronic devices, papers, and effects. The district court stated simply, "You must submit yourself to a reasonable search." App'x at 62. For the reasons above, we do not believe Meadows would have been "left guessing" about whether a "reasonable search" permitted the Probation Office to search him and his

---

[4] Because the condition was not adequately pronounced on the record and Meadows therefore lacked notice of its breadth, we review the procedural challenge to this condition de novo, whether or not Meadows objected in the district court. *See Washington*, 904 F.3d at 207; *Rosado*, 109 F.4th at 124.

surroundings for guns. *Rosado*, 109 F.4th at 124. Therefore, the district court adequately pronounced the search condition to the extent it covers Meadows's "person," "property, residence, [and] vehicle." App'x at 68. But because nothing the district court said suggested that Meadows would be required to expose the entirety of his online life and personal information to government scrutiny, the district court's oral pronouncement did not provide adequate notice that the search condition would sweep so broadly.[5]

We cannot excuse the district court's failure to pronounce the extension of the search condition to electronic devices, papers, and effects, because extending the search condition in that way does not merely "clarify" or add "basic administrative requirements" to the spoken sentence. *Rosado*, 109 F.4th at 124 (quoting *Washington*, 904 F.3d at 208).[6] Rather, the written order imposes "significant new restrictions on [Meadows's] liberty," *id.* at 125, by extending a search beyond his person, physical surroundings, and vehicle to encompass all of his electronic devices and personal information. *See Riley v. California*, 573 U.S. 373, 386 (2014) (declining to extend search-incident-to-arrest doctrine—which permits warrantless searches of arrestees' persons, homes, and vehicles in certain circumstances—to cell phones, which "place vast quantities of

---

[5] The fact that the district court in this case adopted the search condition from the presentence report ("PSR"), and that the oral pronouncement could be understood to paraphrase a snippet of the PSR, was "not sufficient" to give Meadows notice of the full extent of the condition. *See Rosado*, 109 F.4th at 124. "If it were, a defendant would leave his sentencing without the requisite certainty as to which portions of the PSR's proposed conditions were imposed . . . ." *Id.*

[6] In *Rosado*, we strictly construed the circumstances in which an unpronounced condition merely "clarifies" an oral sentence. For example, the district court in *Rosado* pronounced orally that the defendant was required to "undergo a sex offense specific evaluation and participate in an outpatient sex offender treatment and/or outpatient mental health treatment program on the standard terms and conditions." 109 F.4th at 125 (citation omitted). We held the district court's written order went beyond clarifying the "standard terms" of treatment, when it required the defendant to get approval from his treatment provider to access to legal pornography involving adults and other websites. *See id.* at 123, 126.

personal information literally in the hands of individuals," and searches of which "bear[] little resemblance to" searches of physical spaces and objects).[7]

Therefore, we conclude the district court did not pronounce the portion of the search condition covering electronic devices, papers, or effects, and the reason for such searches is not self-evident in the record. However, the district court did adequately pronounce the portion of the search condition covering Meadows's person, property, residence, and vehicle, and the reasoning for requiring such searches is amply supported by the record.

### C. Drug Treatment Condition

The district court also imposed, in its written order, a requirement to "participate in an outpatient drug treatment program approved by the United States Probation Office, which program may include testing to determine whether you have reverted to using drugs or alcohol." App'x at 68. This condition is improper for the same reasons as the extension of the search condition to electronic devices, papers, and effects.

First, as the government concedes, "there is no basis in the record for concluding that Meadows is an abuser of controlled substances or alcohol," and thus no basis to require mandatory drug treatment and testing. Gov't's Br. 37. Meadows's conviction for possession with intent to distribute years ago does not indicate that he abused drugs himself. The government did not ask for a drug treatment condition, and the Probation Office did not recommend one in the PSR.

---

[7] On the other hand, even if we determined that the requirement to submit Meadows's "person," "property, residence, [and] vehicle" to reasonable searches was not pronounced, we would conclude that the written order specifying those locations merely "clarif[ied] the terms of the spoken sentence." *Rosado*, 109 F.4th at 125.

11

Second, the district court did not orally pronounce the drug treatment condition on the record. The written order imposes two separate special conditions concerning mental health treatment and drug treatment. App'x at 68. But the district court orally pronounced the following:

> You must participate in an outpatient treatment program approved by the probation department.

> You must participate in an outpatient mental health treatment program, again, as approved by the probation department.

App'x at 62. The district court thus never orally pronounced a drug treatment condition, and we may not speculate about whether it meant to do so.[8] Adding mandatory drug treatment on top of mental health treatment is neither a "basic administrative requirement[]" nor a mere clarification, but a significant burden on Meadows's liberty that must be pronounced under our precedent. *Rosado*, 109 F.4th at 125.

### D. Remedy

In *Rosado* we explained that, outside of limited exceptions discussed above, "in the event of variation between an oral pronouncement of sentence and a subsequent written judgment, the oral pronouncement controls, and any burdensome punishments or restrictions added in the written judgment must be removed." *Id*. at 124 (quoting *Rosario*, 386 F.3d at 168). In other cases, where the only defect in a special condition of supervised release was the district court's failure to explain its reasoning, we have remanded for resentencing consistent with our opinion. *See Sims*, 92 F.4th at 129. But in cases like this one, where the district court also failed to state the challenged special

---

[8] In *Rosado*, for example, the district court pronounced a condition requiring the defendant to "permit the U.S. Probation Office to install any application or software that allows it to survey and/or monitor his computer and similar activity." 109 F.4th at 123. We held that the written addition of a requirement that the defendant submit to "initial and periodic unannounced examinations" of his devices was procedurally improper. *Id.* at 125. We did not ask whether the district court meant to add the words "periodic" and "unannounced" to its oral sentence, because the discrepancy itself deprived the defendant of adequate notice of his sentence.

condition on the record, "the typical rule is that unpronounced conditions must be stricken from the judgment upon remand." *Rosado*, 109 F.4th at 126. We have acknowledged that the "typical" remedy may not be appropriate in all cases. *Id.* at 125–26. But in this case, where special conditions of supervised release were neither explained on the record, supported by the record, nor orally pronounced on the record, we "will not diverge from the typical practice of striking unpronounced conditions." *Id.* at 126.[9]

\*　　\*　　\*

We have considered Meadows's remaining arguments and determined that they lack merit. Accordingly, we **REMAND** with instructions to amend the written judgment to strike (1) the words "papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects" from the search condition, and (2) the drug treatment condition in its entirety. We otherwise **AFFIRM** the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk

---

[9] Our instruction to strike the word "effects" from the judgment should not be construed to prohibit the Probation Office from searching a physical container in the course of searching Meadows' "person," "property, residence, [or] vehicle," if such search is otherwise lawful and justified by the requisite level of individualized suspicion.

13